## Dillinger's Appeal.

35 357
131 218

35 357
147 110

35 357
f195 33

25 357
207 312

35 357
36 SC 507

A husband and wife, by articles of separation, agreed to live separate and apart, the husband covenanting to give a certain portion of his property to a trustee for the use of the wife, and the wife and her trustee covenanting, in consideration thereof, that she would not, at any time thereafter, claim any jointure, dower, or thirds out of his estate; the husband performed his part of the contract, and the wife, in his lifetime, contracted a second marriage: *Held*, that the articles of separation were binding on the wife in equity, and that, on the husband's death, she was not entitled to any portion of his estate: also, that she was not entitled, as his widow, to the $300 given by the Act of 1851.

APPEAL from the Orphans' Court of *Lehigh county.*

This was an appeal by Ann Dillinger from the decree of the court below, distributing the estate of John Dillinger, deceased, in the hands of Henry Dillinger, his executor.

John Dillinger was married to the appellant in March 1823; and they lived together as man and wife until the 15th July 1832, when the following articles of separation were executed between them:—

"This indenture, made the 15th day of July, A. D. 1833, between John Dillinger, of Upper Milford township, in the county of Lehigh, and state of Pennsylvania, farmer, of the one part, and Jacob Geissinger and Ann Dillinger, of the other part: whereas, divers unhappy contests and differences have, of late, subsisted between the said John Dillinger and Ann, his wife, insomuch that they have mutually agreed to live separate and apart from each other; and it is reasonable, when domestic confidence and reciprocal affections exist no more, that individuals should be at liberty to establish for themselves such repose as may be necessary for their welfare, and also the well-being of society at large requires that such dissensions should not exist. Now, this indenture witnesseth, that, for the establishing and supporting, and more effectually carrying the said agreement into execution, the said John Dillinger doth hereby for himself, his heirs, executors, and administrators, covenant, promise, and agree to and with the said Jacob Geissinger, his heirs, executors, and administrators, and also with the said Ann, his wife, that it shall and may be lawful to and for the said Ann, his wife, and that he, the said John Dillinger, shall and will permit and suffer her, the said Ann, from time to time, and at all times hereafter during her natural life, to. live separate and apart from him, and to reside and be in such place and places, and in such family and families, and with such relations, friends, or other persons, and to follow and carry on such trade and business as she, the said Ann, from time to time, at her will and pleasure, may see proper to do, notwithstanding her pre-

[Dillinger's Appeal.]

sent coverture, and as if she were a *feme sole* and unmarried; and that the said John Dillinger shall not, nor will, at any time or times hereafter, sue or prosecute her, the said Ann, in any court here or elsewhere, for living separate and apart from him, or compel her to cohabit with him, or sue, molest, disturb, or trouble her for such living separate and apart from him, or any other person whatsoever, for receiving, harbouring, or entertaining her, nor shall nor will, without the consent of the said Ann, visit her or knowingly come to any house or place where she shall or may dwell, reside, or be, nor send, or cause to be sent any letter or message to her; nor shall nor will, at any time hereafter, claim or demand any of the moneys, clothes, linen, woollens, household goods, or stock in trade, which she, the said Ann, now has in her custody, power, or possession, or in the possession of any one else for her, or which she shall or may at any time hereafter purchase, or which shall be devised or given to her, or which shall be otherwise acquired by her, nor shall the said goods or effects, or any part thereof, be liable to be taken in execution for the payment of his the said John Dillinger's debts; but that she, the said Ann, shall and may enjoy and absolutely dispose of the same as if she were a *feme sole* and unmarried.   And the said John Dillinger doth further covenant, promise, and agree that he shall and will immediately, upon the execution of this indenture, pay the said Jacob Geissinger six hundred and thirty-three dollars and ten cents, in good and lawful money, and also deliver up to him household goods and effects to the value of two hundred and thirty-three dollars.   And the said John Dillinger doth hereby, for himself, his executors, administrators, and assigns, covenant, promise, and grant that it shall and may be lawful to and for the said Ann, notwithstanding her coverture, and she is hereby authorized and empowered, from time to time, and at all times hereafter, freely and absolutely to dispose of all her estate, rights, and effects at her will and pleasure, either in her lifetime or by writing, purporting to be her last will and testament, without the control, or any let, molestation, or denial from or by him, the said John Dillinger, or by any other person or persons claiming or to claim by, from, or under him, and as fully and amply as if the said Ann were sole and unmarried.   And that the said John Dillinger, his heirs, executors, or administrators, shall and will permit and suffer the probate of such will by the executor or executors thereof, the consent thereto of the said John Dillinger being hereby declared. And in consideration of the premises, the said Jacob Geissinger, in behalf of the said Ann Dillinger, for himself, his heirs, executors, and administrators, doth covenant, promise, and agree to and with the said John Dillinger, his heirs, executors, administrators, and assigns, that the said Ann Dillinger shall not from henceforth at any time trouble, molest, sue, or prosecute the said

[Dillinger's Appeal.]

John Dillinger for any claim by way of alimony; nor shall he, the said John Dillinger, be sued or prosecuted by him, the said Jacob Geissinger, his heirs, executors, administrators, or assigns, or by any other person or persons whatsoever, for any debts, dues, or demands, contracted or to be contracted by her, the said Ann Dillinger, at any time or upon any account whatever, nor for any trespass which she, the said Ann Dillinger, may happen to commit or be charged with. And the said Jacob Geissinger, for himself, his heirs, executors, and administrators, doth further covenant, promise, grant, and agree, to and with the said John Dillinger, his heirs, executors, administrators, and assigns, that she, the said Ann Dillinger, shall not claim, at any time or times hereafter, any right or title which she, the said Ann Dillinger, now hath or may have to any jointure, dower, or thirds, into or out of the estate, real, personal, or mixed, of which the said John Dillinger now is or hereafter may be seised or possessed, or any part thereof, but that he, the said John Dillinger, may bargain, sell, alien, enfeoff, release and confirm unto any person or persons whatsoever all such estate of which he is now seised or possessed, or of which he may hereafter become seised and possessed, clear of her, the said Ann Dillinger's claim of dower; and that he, the said Jacob Geissinger, his heirs, executors, administrators, shall and will, at all times hereafter, during the said separation, of and from all such suits, actions, claims, demands, and prosecutions, of whatsoever nature or kind, and of and from all costs, expenses, and charges arising thereon, well and sufficiently save, keep harmless, and indemnify the said John Dillinger, his heirs, executors, administrators, and assigns; and the said Jacob Geissinger further covenants with the said John Dillinger that he will hold the said money and goods to the sole and separate use of the said Ann Dillinger, and at her only sole and separate disposal.

"In witness whereof, the said parties to these presents have hereunto interchangeably set their hands and seals, dated the day and year first above written.

"JOHN DILLINGER, JR. [L. S.]
"JACOB GEISSINGER. [L. S.]
"ANNA DILLINGER. [L. S.]

"Sealed and delivered in the presence of
  "PETER COOPER.
  "WILLIAM LANDIS."

This agreement was followed by an immediate separation, and by the contemporaneous delivery to the appellant of the money and goods mentioned in the articles.

On the 6th October 1840, John Dillinger exhibited a libel for a divorce from the appellant, on the ground of desertion; she

answered, denying the desertion, and setting up the articles of separation as a justification of her continued absence from his bed and board; and the libel was thereupon dismissed by the court.

In 1854, the appellant contracted a marriage with one Christian Hitzelberger, and lived and cohabited with him, up to the time of John Dillinger's decease, on the 28th January 1856.

The executor having filed his account, the appellant appeared before the auditors appointed to report distribution of the estate in his hands, and claimed $300 as his widow, under the Act of 1851, and also one-half of his personal estate under the intestate laws.

The auditors rejected the claims of the appellant, and reported that although she was not deprived of her right to a portion of the testator's estate, by reason of the articles of separation, yet she was barred by the statute of 13 Edw. 1., ch. 34, which makes adultery a bar of dower, by reason of her second marriage during the lifetime of the testator; and that she was not his widow within the meaning of the Act of 1851.

The court below confirmed the report of the auditors, and decreed distribution in accordance with the will of the testator, excluding the appellant from all share of the estate; whereupon she took her appeal to this court.

*Stiles* and *C. & M. Goepp*, for the appellant.—The statute of Edw. 1., ch. 34, does not touch this case, it only applies where a wife *elopes* with an adulterer: *Roberts' Dig.* 186; Cogswell *v.* Tibbets, 2 *N. H.* 41; *Reeves on Domestic Relations* 41. And she is not here claiming her dower at common law, but her statutory part of her husband's estate, under the Intestate Act of 8th April 1833: Leinaweaver *v.* Stoever, 1 *W. & S.* 160; Borland *v.* Nichols, 2 *Jones* 38; Ellmaker *v.* Ellmaker, 4 *Watts* 89; Hinnershitz *v.* Bernhard's Executors, 1 *Harris* 518.

A post-nuptial agreement between husband and wife, will not bar the wife of her share of the husband's estate: *Reeves on Domestic Relations* 45; 1 *Roper on Husband and Wife* 468; Parham *v.* Parham, 6 *Humph.* 287. And at all events, the appellant is entitled to the $300 given to widows by the Act of 14th April 1851: Clark *v.* Clark, 6 *W. & S.* 85.

*Bridges* and *A. E. Brown*, for the appellee.—An agreement between husband and wife, in view of immediate separation, if reasonable, and not in fraud of creditors, and contracted on the part of the wife through the medium of a trustee, will be supported in equity: Hutton *v.* Hutton, 3 *Barr* 100; McKennan *v.* Phillips, 6 *Wh.* 571; Seeling *v.* Crawley, 2 *Vern.* 386; Elworthy *v.* Bird, 1 *Sim. & Stu.* 372; Lehr *v.* Beaver, 8 *W. & S.* 102; Guth

[Dillinger's Appeal.]

*v.* Guth, 3 *Bro. C. C.* 614; Blaker *v.* Cooper, 7 *S. & R.* 500; Carson *v.* Murray, 3 *Paige Ch.* 483, 501.

But the case of the appellant is also within the statute of 1 Edw. 1., ch. 34: *Hood on Executors.* 233; 2 *Inst.* 433; *Parke on Dower* 223–4; Coot *v.* Berty, 12 *Mod.* 232; Watkyns *v.* Watkyns, 2 *Atk.* 97; Sidney *v.* Sidney, 2 *P. Wms.* 269.

The opinion of the court was delivered by

WOODWARD, J.—All the questions on this record, whether they arise under the exceptions to the executor's account, or under the claim of the appellant to one-third of the testator's personal estate, and to the benefit of the Act of Assembly, that gives widows three hundred dollars' worth of their husband's estates, are resolvable into the primary question, whether she was the widow of the testator, within the meaning of that word, as employed in our statutes of distribution. She excepts, and claims in that character, and in no other, and if she were not widow, it is quite clear, that she has no interest in the distribution of the estate, and ought not to be heard. If she were widow, then these questions must be decided.

That she was married to John Dillinger in 1823—that they lived together as man and wife until 1832, when, by carefully-drawn articles of separation, to which she and her trustee were parties of the one part, and her husband the other party, they agreed to live separate and apart, releasing all their respective rights in each other's estates—and that she married Christian Hitzelberger in 1854, and lived with him as his wife until the death of John Dillinger, in 1856, are conceded facts.

The articles of separation did not destroy the relation of husband and wife for all purposes. They were neither a divorce nor did they lay ground for a judicial sentence of divorce, and therefore the Common Pleas in 1840 did right in dismissing the husband's petition for a divorce on the ground of the wife's desertion. But the articles did amount to a total surrender of all rights of property in the husband's estate. And that upon an ample consideration, which courts of equity, both in England and in this country, would support in favour of a wife. Dillinger agreed with Geissinger, the trustee of his wife, that he would permit her to live separate and apart from him for all the residue of her life, and to carry on any trade or business, as if she was a *feme sole*— that he would not molest or disturb her, or any who might harbour her—that he would not claim any property she might have or acquire—that it should not be taken for his debts, but that she might enjoy and dispose of the same as absolutely as if she were unmarried—that he would pay to said Geissinger six hundred and thirty-three dollars and ten cents, and also deliver up to him household goods and effects to the value of two hundred and thirty-

[Dillinger's Appeal.]

three dollars, and he finally empowered her to make deeds and a will for the disposition of her property, according to her pleasure. In consideration of all which, Geissinger covenanted that the said Ann Dillinger should not trouble or sue the said John Dillinger for any claim by way of alimony, nor should he be sued for any debts of hers—nor should the said Ann claim, at any time thereafter, any right or title which she then had or might have to any jointure, dower, or thirds out of the estate, real, personal, or mixed, of which the said John Dillinger was then or might be thereafter seised. or possessed, but that he, the said John Dillinger, might convey and confirm unto any person whatsoever all estates of which he was then or might thereafter be seised or possessed, clear of her claim of dower—and then follows a general covenant of indemnity on the part of Geissinger, and a covenant to hold the said money and goods, for the sole and separate use . of the said Ann Dillinger.

This agreement, signed by the three parties, has been the law of their relation from the day of its date. Dillinger made the stipulated payments, and performed faithfully all his covenants, and now, after his death, and after living in adultery with Hitzelberger, she comes into a court of equity, and, in shameless disregard of the covenants of her trustee, made with her consent and for her benefit, claims one-half of her husband's estate.

True, she was not *sui juris* when the contract was made, but many agreements between husband and wife, for living separate, have been enforced in equity, even where there was no trustee to protect the wife—but here, where there was a trustee, and where the contract was fair and reasonable, and the wife has had the full benefit of it, and more, indeed, than she bargained for, by so much as her second husband was worth to her, no court would hesitate a moment to enforce the agreement against her. Mutuality is the very essence of equity. If the contract would have been enforced against the husband for the wife's benefit, it must be against the wife for the protection of the husband's estate. That it would have been enforced against the husband, is abundantly shown by the cases cited in argument. Indeed, the whole law of the case is condensed in Hutton. *v.* Duey, 3 *Barr* 104, where it was said, deeds for the separation of husband and wife are valid and effectual, both at law and .equity, provided their object be actual and immediate, and not a contingent or future separation. The arrangement here, added the judge, contemplated an immediate separation—was carried into effect in good faith by the husband—has nothing unreasonable in it, and consequently the wife, after the death of the husband, is not entitled to the aid of the court in any attempt to violate it.

In effect and substance, the articles were a solemn and legal

[Dillinger's Appeal.]

renunciation of dower in the husband's estate, and of all interests that might arise under existing or future statutes.  Therefore, she has no right to claim in character of his widow.  ·It is against equity and conscience, that she sets up a claim.  It is said, she is embraced by the terms of the three hundred dollar law in favour of widows.  We think not.  We hold the legislature did not mean, by the word widow, a person in her circumstances, and that we should misapply the law, if we gave her the benefit of it.

As to the other point, whether she is within the statute of 13 Edw. 1., cap. 34, by reason of her living in adultery, we do not care to inquire.  That statute contemplates the case of an elopement by the wife, or if violently carried away, voluntarily remaining with her ravisher.  Possibly this case might be fairly treated as within the purview of the statute, but we rest our judgment altogether on the articles of separation, which we hold are conclusive against all the pretensions of the appellant.

The decree is affirmed.

READ, J.—I concur as to the claim for the $300, but dissent as to the remainder.