WALKER (BANK OF THE METROPOLIS v.). See Cases Nos. 903 and 904.

WALKER (BANK OF WASHINGTON v.). See Cases Nos. 955 and 956.

WALKER v. BARTON. See Case No. 12,043.

---

## Case No. 17,065.

### WALKER v. BEAL et al.

[3 Cliff. 155.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1868.

JURISDICTION OF CIRCUIT COURT — FOREIGN ADMINISTRATORS — HUSBAND AND WIFE — SEPARATION AGREEMENT—TRUSTS—RELINQUISHMENT OF DOWER—SUBSEQUENT COHABITATION.

1. The circuit court in this district has jurisdiction to grant relief under a bill praying for an account of certain funds received by a testator from the complainant, under a promise to invest the same for the complainant, where the testator died in Rhode Island, and his last will and testament was proved there, but administration was also granted in this state, where the testator left real and personal estate to a large amount.

2. A husband and wife agreed to live separately. Certain property was transferred by the husband to trustees, to pay the income to the wife, upon condition that she should relinquish her claims of dower to purchasers of such portions of his other real estate as he should sell during coverture; and if she survived him, she should relinquish her right of

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

dower in all the remainder of his real estate. *Held,* such a trust may be upheld in a court of equity.

3. The agreement of separation in this case was not rendered invalid by the provision for its continuance, should the parties after the making of it elect to cohabit. Neither was it suspended while they lived together. It was evident from the conduct of the parties that they regarded the indenture as operative during their cohabitation.

4. The indenture in this case was not solely based on separation. Temporary reconciliation and cohabitation did not suspend its operation, because the parties had expressly covenanted that it should not.

5. Unless it be assumed that the husband cannot be the trustee of his wife, in any case, it cannot be maintained under the indenture in this case that the trust property was wholly discharged of the trust, by the payment of the rents, income, etc. to the complainant, or that these, when paid by her to her husband, became his property.

6. The husband in this case received from her the rents, income, etc. of the trust property, under an agreement to invest it for her and her children. Such an arrangement made the husband the trustee of the wife.

7. The complainant was not precluded from setting up her claim by the indenture of compromise, she being a mere formal party to the adjustment, and the purpose of the instrument being to effect an adjustment between the heirs-at-law and the residuary legatees, and there having been no concealment of this claim on the part of the complainant.

8. Acceptance by the complainant of the provision made for her in her husband's will is not inconsistent with her claim under the agreement of separation, because the declared intention of the testator was, that the amount secured to the complainant in the agreement of separation, coupled with the provision made for her in his will, should be in full for her separate maintenance, and in lieu of dower.

The complainant [Eliza Walker] was the widow of William J. Walker, of Newport, in the state of Rhode Island, and the respondents [Joseph S. Beal and others] were the executors of the last will and testament of the deceased, as duly constituted under the laws of this commonwealth. The introductory allegations of the bill of complaint were, that the complainant, in the month of September, 1845, was the lawful wife of the deceased, and that they both then were, and for many years previously had been, inhabitants of Charlestown, in this state; that at that time and for many months before that time he, the husband, had been guilty of such extreme cruelty towards the complainant, that she ultimately, on or about the 15th of September of that year, was compelled to leave his home, and no longer cohabit with him; that his acts and conduct toward her were such that by the laws of the state she was entitled by reason thereof to prosecute and maintain against him a suit for divorce from bed and board, and to be decreed in such suit a liberal and suitable allowance for alimony; that being about to institute proceedings for such divorce, he, in order to induce her to forbear to carry that intention into effect, and to avoid a decree against him for such alimony, proposed to execute an agreement with the complainant that they should live separate and apart from each other, and to provide for her support and maintenance by a conveyance of real and personal estate to trustees, with power, and whose duty it should be, to appropriate the income thereof for that purpose. Based upon those introductory averments, the bill of complaint proceeded to allege that the complainant accepted the proposition of her husband, then in full life, and that the indenture embodying the terms of the same, and which was annexed to the bill of complaint, was on the 24th of February, 1846, duly executed by all the parties, including the trustees; that property, real and personal, to the amount therein agreed, was transferred to the trustees therein named, in trust, that they should pay the income of the same to the complainant during her life, upon the conditions therein provided. By the terms of the indenture they covenanted to live separate and apart from each other during coverture, unless they should thereafter elect to live together, as the provision assumed they might do; and the complainant also agreed, that if her husband should sell any portion of his real estate during her lifetime, to relinquish to the purchaser her claim of dower in the same, and after his decease to release her dower or right of dower in all his remaining real estate, when thereto requested by his heirs, executors, or administrators. Subject to these conditions and some others, not material to be mentioned, the complainant accepted the provision, in full satisfaction of her support and maintenance, and of all alimony during coverture, and covenanted and promised that she would at all times thereafter live separate and apart from her husband during coverture, unless they should thereafter mutually agree to live together. But the express provision was, that if they "shall at any time or times hereafter cohabit and live together as heretofore, these presents shall not thereby be rendered invalid." On the contrary, the stipulation was, that the trusts therein contained should in that event be executed in like manner as if they should live separate and apart. Pursuant to that indenture they separated, and the complainant lived apart from her husband from the date of the instrument until the month of April, 1846, when at his request, as she alleged, she returned to live with him, and continued to live with him until the month of June, 1860, when she was compelled by his cruel and harsh treatment of herself and daughter to cease to live with him, and ever after during his life continued so to live separate and apart.

Due conveyance was made of the described real and personal property to the trustees, and they covenanted in the same instrument that they would collect the rents, interest, and income of the same, and cause to be paid out of the trust property, rents, interest, and income, all debts which the complainant might thereafter contract, and after deducting all necessary and proper charges and expenses, to pay

annually or oftener the residue of the rents, interest, and income to the complainant during her natural life, for her sole and separate use and benefit, and upon her own order and receipt in writing. The execution of the indenture was admitted, and it was not controverted that the persons named as trustees in the instrument accepted the trust, and continued to execute the same during the lifetime of the husband, until his death. They collected the rents, interest, and income as covenanted, and the proofs showed that in every instance, except the first, they gave the check for the net amount to the complainant. When they were about to make the first semiannual payment, the proof was, that the husband presented an order from the complainant for the amount, and it appeared that the money was paid to him, under that order, he stating that he had advised the complainant to allow him to invest the money for her use and benefit. The subsequent payments, however, throughout the entire period of the controversy, were without exception made to the complainant. The payments were made in checks, and the proofs show that the checks were always received by the complainant, and that she gave the proper receipt. The allegation of the bill of complaint was, that the complainant, at the suggestion of her husband, and upon his agreement to invest the several amounts so received by her from the trustees for her benefit and that of her children, delivered the checks to him, and that he semiannually received the same from her, as they came to hand, promising at all times to make the investment, as he had originally agreed. The proof of the several payments substantially as alleged was full and satisfactory, as they appeared in a schedule, signed by the complainant, and found among the papers of the deceased, which passed into the hands of his executors. Satisfactory proof, also, was exhibited of the agreement of the husband to make the investment, as alleged in the bill of complaint. The agreement was fully proved by the uncontradicted statements of two credible witnesses, whose testimony was corroborated by the exhibit in the case, which the answer of the respondents admitted was found among the papers which came into their hands as executors of the last will and testament of the deceased.

B. R. Curtis, S. Bartlett, and Francis Bartlett, for complainant

By the articles the agreed amount of property was transferred to trustees in trust, to pay its income to Mrs. Walker during her life, upon condition that she should release her possibility of dower in any and all real estate her husband might sell during his lifetime; and, if she should survive him, that she should release her right of dower in his estate. The settlement, therefore, was made by him, and accepted by her, not merely in lieu of alimony which she could have had decreed to her out of his then large estate, and as being about the amount he had re-

ceived in her right from her father's estate, but in place of her dower. And, therefore, it was expressly stipulated that if the parties should at any time or times thereafter cohabit together as heretofore, "these presents shall not be thereby rendered invalid; but the trusts herein contained shall be executed (subject to the conditions as to her release of dower) in like manner as if the parties should live separate." It is settled law that such a trust, either with or without the covenant of the trustees to indemnify the husband against the wife's debts, is founded on valuable consideration; is valid, and is not terminated by the subsequent cohabitation of the parties. Compton v. Collinson, 2 Brown, Ch. 377; Worrall v. Jacob, 3 Mer. 266; Jee v. Thurlow, 2 Barn. & C. 547; Wilson v. Mushett, 3 Barn. & Adol. 743; Webster v. Webster, 23 Eng. Law & Eq. 216; 17 Eng. Law & Eq. 278; Randle v. Gould, 8 El. & Bl. 457; Babcock v. Smith, 22 Pick. 61. The separation having continued some months after the execution of the articles, Mrs. Walker returned to her husband at his request, as he expressed it, "as a visitor or guest." While so living together the transactions took place out of which arose the trusts on which this bill is founded. It is clear that a husband may be a trustee for his wife. All that is necessary is that he should agree to become so, and although the agreement be made between him and her alone, the trust will attach upon him in the same manner and under the same circumstances that it would if he were a mere stranger. 2 Story, Eq. Jur. p. 624, § 1380; Neves v. Scott, 9 How. [50 U. S.] 212. Such agreement imposes the character of a trustee on the husband even when there is no valuable consideration, and it is made concerning property belonging to him. A fortiori when there is a valuable consideration, and it is made concerning her separate property. 2 Kent. Comm. 163, and cases cited; Woodward v. Woodward, 8 Law T. (N. S.) 749; Grant v. Grant, 9 Law J. (N. S.) 802, 12 Law T. (N. S.) 721. Applying these principles to the facts proved by the evidence in the record, it is clear that the husband took from his wife her income, which was her separate estate, under an express agreement to invest it for her use, and made himself her trustee for that purpose. The objection that the suit should have been brought in Rhode Island is untenable. The scope of the bill is to charge the estate of the defendant's testator with a trust, and to procure a decree in favor of the complainant as a creditor, for that sum of money which may be found due to her on an account of such trust. The contracts out of which the trust arose were all made in Massachusetts, between persons then domiciled there. The circuit courts of the United States, as courts of equity, have jurisdiction over executors and administrators, when the parties are citizens of different states. Green's Adm'r v. Creigh-

ton, 23 How. [64 U. S.] 90. And they administer the equity law recognized by the constitution, and not the merely local law of any state. Neves v. Scott, 13 How. [54 U. S.] 272, and cases there referred to; Harvey v. Richards [Case No. 6,184].

B. F. Thomas and H. C. Hutchins, for respondents.

There is, defendants submit, no real equity to support the plaintiff's claim. The indenture of trust was made, as plaintiff expressly alleges, to provide for the support and maintenance of the plaintiff, and the income was to be "devoted to that purpose." Mrs. Walker accepted the provision for her support and maintenance. Her claim now is for the income of the fund during the period of reconciliation, when the plaintiff was living with and wholly supported by her husband; when she got precisely that which it was the object of the indenture to secure. The plaintiff says she ought to have both support and income. The claim is made at a time, and under circumstances, which cannot fail to excite the deepest suspicion and distrust. Fry, Spec. Perf. 155; Colson v. Thompson, 2 Wheat. [15 U. S.] 336. It is first made twenty years after the oral promises are alleged to have been made. It is made, for the first time, after the death of Dr. Walker. Not till after the death of her husband, not till after her interest is secured under the will, not till after the compromise between the heirs-at-law and the residuary legatees, to which she was a party, is this claim set up. The making of the promise upon which the bill rests is not so clearly established that a court of equity will enforce it. The agreement contained in the indenture of separation must stand, if at all, as a voluntary agreement of husband and wife, to live separately and apart from each other during their coverture. It is expressly so declared in the written contract. The plaintiff and her husband resided in Massachusetts when the agreement for separation was made, the indenture executed, and the moneys delivered, for which the plaintiff seeks to recover. The validity of the contract and the effect of the payments must therefore be determined by the law of Massachusetts. This indenture of separation would not, we submit, have been upheld and enforced by the courts of Massachusetts. The question affecting the marriage relation, and its rights and duties, is peculiarly one of state policy, of the lex loci. Story, Confl. Laws, §§ 276, 280; De Couche v. Savetier, 3 Johns. Ch. 190; Blanchard v. Russell, 13 Mass. 1; Anstruther v. Adair, 2 Mylne & K. 513.

Though the invalidity of articles of voluntary separation between husband and wife has not been the subject of express decision in Massachusetts, the recent tendencies and premonitions of the cases are all in that direction. See, among others, Ames v. Chew, 5 Metc. [Mass.] 320, 323; Albee v. Wyman, 10 Gray, 222. The recognition of their validity has been deeply regretted, whenever and wherever made. Lord St. John v. Lady St. John, 11 Ves. 526, 536, 537; 2 Story, Eq. Jur. 1427, 1428; Evans v. Evans, 1 Hagg. Consist. 35; Jee v. Thurlow, 2 Barn. & C. 547; Durant v. Titley, 7 Price, 577. If the agreement was not void, it was annulled or suspended during the period of the reconciliation and the cohabitation of the parties thereto; because the agreement was based on separation, and, by the reconciliation, new obligations arose inconsistent with separation. Lord St. John v. Lady St. John, 11 Ves. 526; Shelf. Mar. & Div. 629; Hunter v. Bryant, 2 Wheat. [15 U. S.] 32; Westmeath v. Salisbury, 5 Bligh. (N. S.) 339; Clancy, Husb. & Wife, 414; Fletcher v. Fletcher, 2 Cox, Ch. 99; Jee v. Thurlow, 2 Barn. & C. 550; Westmeath v. Westmeath, 1 Dow. & C. 519; Bright, Husb. & Wife, 349; Hindley v. Westmeath, 6 Barn. & C. 200; Wells v. Stout, 9 Cal. 479; Heyer v. Burger, Hoff. Ch. 1; Shelthar v. Gregory, 2 Wend. 422; Slatter v. Slatter, 1 Younge & C. Exch. 28, 35; Webster v. Webster, 17 Eng. Law & Eq. 278. The provision of the indenture of separation, that subsequent cohabitation should not render the agreement invalid, does not control the disposition of the income, while the plaintiff received her support and maintenance under her husband's roof and out of his money. The actual maintenance by the husband, the parties living together, was a satisfaction in equity of the agreement that the income of the trust fund should be devoted to that purpose. Hunter v. Bryant, 2 Wheat. [15 U. S.] 32. A court of equity will not require the husband to account for the income of the separate estate of his wife, which the husband, with the consent of his wife, has been accustomed to receive. 2 Story, Eq. Jur. § 1396; Hunter v. Bryant, 2 Wheat. [15 U. S.] 32; Squire v. Vean, 4 Brown, Ch. 326. The income of the trust fund, when paid to the complainant by the trustees, became wholly discharged of the trust. The trustees had fully performed their duty in relation to it; and the money thus paid to her as income, when paid by her to her husband, became, by the laws of Massachusetts then in force, the property of her husband. Allen v. Wilkins, 3 Allen, 321; Lord v. Parker, Id. 129; Edwards v. Stevens, Id. 315; Ingham v. White, 4 Allen, 412. The acceptance by the complainant of the provision made for her in the will of her husband is inconsistent with the claim she now makes. [1]

CLIFFORD, Circuit Justice. The reasonable inference from the agreement is, that it was executed at the request of the husband, and that it was kept by him as a voucher to show that certain sums were to be deducted from the amounts received by him from the complainant, as the net rents, interest, and income of the trust property. Viewed in that light, the paper affords strong confirmation of the testimony of the daughter, and of the trustee, whose deposition is in the record. The prayer of the bill of complaint is for an account, and,

it is very clear that it ought to be granted, unless the defences, or some one or more of them, as set up in the answer, can be sustained.

The respondents object, in the first place, that inasmuch as the testator had his domicile in the state of Rhode Island, at the time of his decease, the circuit court here has no jurisdiction to grant the relief prayed for in this case. Undoubtedly the fact is, that the testator died at Newport in that state, and it appears that, his last will and testament was duly proved in the state of his domicile, but the answer admits that administration was also granted here, and that the testator left in this state, as well as the state of his domicile, real and personal estate to a large amount. Insolvency is not suggested even in argument, and the sufficiency of the assets here is abundantly proved. The settled law of this state is, that the assets received and inventoried by the executors here are liable, under such circumstances, to the just claims of the citizens of the state, to the full amount. Richards v. Dutch, 8 Mass. 506; Gen. St. 508, § 39; Dawes v. Head, 3 Pick. 128.

Citizens of other states also, where it appears that the estate is solvent, may by proper proceedings in the circuit court of the district enforce their claims against such assets, as it is well settled that those courts, as courts of equity, have jurisdiction over executors and administrators, in such a case, where the parties are citizens of different states. Grain's Adm'r v. Creighton, 23 How. [64 U. S.] 104; Harvey v. Richards [Case No. 6,184].

Coming to the construction of the indenture, the primary suggestion of the respondents is, that it is merely a voluntary agreement of husband and wife to live separately and apart from each other during coverture; but it is quite evident that the proposition cannot be sustained. Irrespective of the parol testimony, it appears by the terms of the indenture that the trust property was granted and transferred to the trustees, upon the condition that the complainant should accept the provision, as a full consideration for her covenant to relinquish all claims of dower to purchasers of any portion of his real estate, if sold during coverture, and to release her right of dower to his heirs, executors, or administrators after his decease. The terms of the instrument also required that she should accept the trust provision as a full satisfaction, not only for her support and maintenance, but also as a full satisfaction of all alimony whatsoever during her coverture. The legal effect of the covenant to live separate and apart is, that they would continue so to live, unless they should thereafter elect to live together; but they mutually covenanted with each other that if they should thereafter cohabit and live together, the indenture should not thereby be rendered invalid, but that the trusts should be executed. subject to the conditions as expressed, in like manner as if they should live separate and apart. The intention of the parties clearly was, that the effect and operation of the indenture should continue during coverture, without suspension or interruption, and without the possibility of its becoming invalid, except upon breach of condition. Suppose that be so, still it is insisted by the respondents that the indenture is void, as a mere voluntary agreement to live separate and apart, because, as they contend, the proof of consideration as alleged in the bill of complainant is insufficient and unsatisfactory. The statement of the answer upon that subject is, that the respondents are ignorant whether or not their testator entered into the indenture for the reasons alleged in the bill of complaint, and therefore they can neither admit nor deny those charges. The express allegation of the bill of complaint is, that the husband prior to the date of that instrument had been guilty of such extreme cruelty to his wife that she was entitled to a divorce from bed and board, and to a liberal allowance for alimony.

Cruel treatment is proved by the daughter, in unmistakable terms, if she is to be believed. When asked whether he was kind, or otherwise, to her mother, she answered that she did not remember the time when he did not treat her mother cruelly; and she proves that the complainant received personal violence from her father. and that he compelled the mother and daughter to leave his house, without any just cause. Unless the witness can be considered as impeached, or in some way discredited, the introductory allegations of the bill of complaint are fully proved. Careful attention has been given to the inquiry, and the court has not been able to perceive any just grounds to hold that the witness is not entitled to belief.

Satisfactory proof has been exhibited in the record derived from the testimony of another witness that the husband confessed that his wife had left him just before the date of the indenture, and that she had employed counsel to obtain a divorce and separate maintenance. Passages also in the indenture, and in the last will and testament of the deceased, afford confirmation of the statement of the witness; and the conclusion of the court is, that the witness is not discredited.

Courts of equity have for a great length of time refused to acknowledge the common-law rule that a married woman is incapable of taking real and personal estate, and holding the same to her own separate and exclusive use. Arrangements of the kind are usually made through trustees, appointed for the purpose, to whom the property real and personal is conveyed, for her sole and exclusive use, but it has long been settled that the intervention of trustees is not indispensable. Whenever real or personal property is given or devised or settled upon a married woman. either before or after marriage, for her separate and exclusive use, without the intervention of trustees, the rule in equity is, that the intention of the parties shall be carried into effect, and that the wife's interest shall be protected against the marital rights and claims of the husband, and

also those of his creditors. 2 Story, Eq. Jur. 1380.

Here the property was transferred to trustees in trust, to pay the income to the cestui que trust, upon condition that she should relinquish her claims of dower to purchasers of such portions of his real estate as he should sell during coverture; and if she survived him, that she should release her right of dower in all the remainder of his real estate. Such a trust, it is insisted by the respondents, cannot be upheld in a court of equity, but the court is not able to concur in that proposition. The views of the respondents appear to be, that the indenture, even if considered as divested of the clause which provides that it shall not be rendered invalid, should the parties thereafter cohabit and live together, is nevertheless void, as contrary to public policy. Objections of that sort have frequently been urged, but they have as often been overruled as they have been presented for consideration. Regrets have been expressed by judges that the rule had not been settled otherwise; but as often as the question has been presented in the later cases, another decision has been added to the list confirming it, until it may be said that it is universally established. Compton v. Collinson, 2 Brown, Ch. 377; Worrall v. Jacob, 3 Mer. 266; Jee v. Thurlow, 2 Barn. & C. 547; Webster v. Webster, 23 Eng. Law & Eq. 216; Wilson v. Mushett, 3 Barn. & Adol. 743; Randle v. Gould, 8 El. & Bl. 457; Babcock v. Smith, 22 Pick. 61; Hunt v. Hunt, 5 Law T. (N. S.) 778.

Special objection is made to the provision of the indenture, that it shall not be invalid in case the parties should thereafter elect to cohabit and live together, as withdrawing all motive from the husband for a reconciliation and return of his wife. Doubt cannot be entertained as to the intention of the parties. Where the instrument contains no such clause, it might well be argued that it was not the intention of the parties that it should continue in force in case of subsequent cohabitation, but every such suggestion is shown to be groundless by the terms of this instrument. Equally groundless is the suggestion that it was suspended during the period the complainant lived in the house with her husband, whether she lived there as agent, or as the wife of her husband. She returned to live with her husband at his request, and it was while they were so living together that the payments of the rents, interest, and income of the trust property were made, and that the checks for the same were received by the husband, as alleged in the bill of complaint. Webster v. Webster, 4 De Gex, M. & G. 437.

The clear inference from the conduct of both parties is, that they alike regarded the indenture as valid and operative, and the conduct of the trustee speaks the same language. The error of the argument for the respondents consists in the assumption that the indenture was solely based on separation. Granting that theory, there would be great weight in the argument, but the court has endeavored to show

that the indenture cannot properly receive that construction. Temporary reconciliation and subsequent cohabitation did not so annul or suspend the operation of the instrument, because the parties had expressly covenanted that it should not, and the trust properly remained, affected by that covenant. Randle v. Gould, 8 El. & Bl. 457. Such being the fact, it is quite clear that none of the authorities cited to the point, by the respondents, have any proper application to the case.

The next proposition of the respondents is, that the rents, interest, and income of the trust property, when paid to the complainant by the trustees, became wholly discharged of the trust, and that the money thus paid to her, as rent, interest, and income, when paid by her to the husband, became the property of the husband. When the payments were made to the complainant, the several sums, as the proposition concedes, were so paid on account of and for the net rents, interest, and income of the trust property.

The next point made is, that the rents, interest, and income became discharged of the trust when the husband was suffered by the wife to receive the checks and to collect the money. Unless it be assumed that the husband cannot be the trustee for his wife in any case, the proposition ought not to be sustained, as it would give effect to a positive fraud. Delivery of the checks was made to him, in every case, upon his unconditional assurance that he would invest the money for her benefit and that of her children, and in the belief induced by his own representations that he was more competent to transact business than the wife, to whom the funds belonged.

But the husband may be trustee for his wife of gifts to her from others, or of the rents, interest, and income of property given by himself to her in trust, and lawfully held by trustees, for her sole use and benefit. 2 Story, Eq. Jur. 1380; 3 Kent, Comm. 163.

Gifts from the husband to the wife may be supported as her separate property, if they be not prejudicial to creditors, even without the intervention of trustees. Nevers v. Scott, 9 How. [50 U. S.] 22; Randle v. Gould, 8 El. & Bl. 457; Woodward v. Woodward, 8 Law T. (N. S.) 749; Grant v. Grant, 12 Law T. (N. S.) 721; Riley v. Riley, 25 Conn. 154; Turner v. Nye, 7 Allen, 181; Wells v. Stout, 9 Cal. 479; Dillinger's Case, 35 Pa. St. 357.

All the checks came from the trustees as payments for the rents, interest, and income of the trust property, and the proof is entirely satisfactory that the husband received the avails, as belonging to the wife, under the indenture, and agreed to invest it for her benefit and that of her children. Such arrangement imposes on the husband the character of trustee, especially in a case where it is concerning her separate property, and where to hold otherwise would sanction misrepresentation and fraud. Consent of the complainant that her husband should receive the checks, and collect the money as his own property, was never

given, and he never received the money with any such understanding. Bell, Husb. & Wife, 525, 526, 531, 534.

Should the court overrule those defences, the next objection of the respondents is, that the complainant is precluded from setting up the claim, by the indenture of compromise. But the answer made by the complainant to the proposition is decisive. She was a mere formal party to the adjustment, and it concerned only the residue of the estate, after the payment of all debts, liabilities, and legacies. The purpose of the instrument was to effect an adjustment between the heirs-at-law and the residuary legatee, and as there was no concealment of this claim on the part of the complainant, the defence of estoppel is not maintained.

The only remaining objection is, that the acceptance by the complainant of the provision made for her in the will of the husband is inconsistent with the claim she now makes; but the court is not able to adopt that conclusion, or perceive that it finds any support in the provisions of the will. On the contrary, the declared intention of the testator was, that the amount secured to his wife in the indenture, coupled with the provision made for her in his will, should be in full for her separate maintenance, and in lieu of dower.

Our conclusion is, that none of the defences set up in the answer can be sustained, and that the complainant is entitled to a decree for the amount.