In re Estate of Geo. W. Taylor.

Opinion delivered October 19, 1904.

1. *Appeal—Findings of Fact—Refusal of Court not Error.*

   The refusal of the Trial Court to make findings of fact on the trial of questions of fact before it, as provided in Sec. 5149 Mansf. Dig. (3354 Ind. Ter. Stat.) is not reversible error.

2. *Dower—Law Governing—Adultery no Bar.*

   Under Act of Cong. May 2, 1890 adopting, Chapts. 20 and 53 Mansf Dig. (12 and 23 Ind. Ter. Stat.) these chapters, as construed by the

Supreme Court of Arkansas becoming the governing law regarding dower in Indian Territory; and, under such law adultery, not followed by divorce, is no bar to widow's right of dower.

3. *Dower—Release by Wife to Husband a Nullity—Separation Agreements—Consideration.*'

An agreement between husband and wife including a release of dower by the wife and including no provision for division of property or wife's maintenance will not bar such wife's claim to dower in her husband's estate upon his death, for the release of dower to a husband is a nullity and the whole agreement was without consideration to the wife.

4. *Widow's Allowance—Not Barred by Separation, Without Divorce.*

A widow's right to the statutory allowances, in addition to dower, is not barred by the fact that she had lived separate and apart from her husband for several years at the time of his death.

Appeal from the United States Court for the Northern District of the Indian Territory; before Justice Joseph A. Gill, February 23, 1903.

· In the matter of the estate of George W. Taylor, deceased, Ellen Taylor, administratrix of the estate and widow of the ·deceased, petitioned for an allowance of dower and allowance of personal property and for support; and Emma Daniels, an heir of the estate, filed opposition to such allowances. From an order allowing dower and disallowing the allowances for support, etc., both parties appeal. Modified.

On January 27, 1902, Ellen Taylor, who had been appointed administratrix of the estate of George W. Taylor, deceased, filed her petition in the probate court of the Northern District, and shows that "she is the widow of said Taylor, deceased; that his only heirs are Emma Daniels, a United States citizen, and the daughter of said Taylor by a former wife, and Mary Whitney, the

daughter of deceased and your petitioner; that the latter resides with the petitioner, and is a member of her family; that she is entitled to sufficient grain to support herself and minor child for twelve months out of said estate; that said estate has 672 bushels of corn"—and asks that all of it be given her for that purpose. Petitioner further shows she is entitled to $150 worth of personal property from said estate, and asks to select the following:

| | | |
|---|---:|---:|
| 1 gray mare, 6 years old, branded P. on left shoulder, 15 hands high, valued in said appraisement at | $ 65 | 00 |
| 1 brown mare, 8 years old, 15½ hands high, blemish in face, stiff ankle on right fore leg, valued in said appraisement at | 40 | 00 |
| 1 set double work harness, valued in said appraisement at | 10 | 00 |
| One Jones mower, valued in said appraisement at | 15 | 00 |
| 1 spring wagon, valued in said appraisement at | 5 | 00 |
| 1 17-jewel gold watch, valued in said appraisement at | 15 | 00 |
| All of the total value of | $150 | 00 |

On same day Emma Daniels, one of the heirs, filed opposition to said allowance as follows: "Comes now Emma Daniels, and shows to the court that the applicant, Ellen Taylor, at the time of the death of George W. Taylor, was not living with him as his wife, and had not so lived for about sixteen years; that the petitioner for several years next preceding the death of deceased resided with a man by the name of Benge, and is reputed to have been married to him; that since the separation she has had two children, by some one other than the deceased, and, if she ever had any right to dower or widow's allowance, she has forfeited the same; that after the separation the petitioner and deceased settled their property rights, and made an agreement touching the same, a copy of which is herewith filed and made part hereof, marked 'Exhibit A.' She therefore prays that the petitioner be not allowed dower or a widow's portion. (Signed) Emma Daniels." On May 9, 1902, Ellen Taylor filed her petition for an

allowance of dower out of said estate, and on May 15, 1902, Emma Daniels filed opposition to said allowance on same ground as above stated by her.   On February 23, 1903, the petitions and responses thereto came on to be heard before Judge Joseph A. Gill, sitting in probate, upon the evidence taken before the probate court, and the following order was made:   "It appearing to the court that said Ellen Taylor is the widow of the deceased, Geo. W. Taylor, and that the adulteries set forth in said responses, if true, would not bar her of dower in this estate, and that nothing appears in said proof that can bar her thereof, the petition therefor is sustained and allowed.   But it appearing to the court that she was living separate and apart from the deceased at the time of his death, and had been for several years, the court is of opinion that her petition for a widow's allowances should be, and the same is, overruled and disallowed, and she is refused allowances in said estate."   From which order both Ellen Taylor, widow, and Emma Daniels, heir, excepted, and appealed to this court.

*W. H. Kornegay*, for appellant Emma Daniels.

*John B. Turner*, for appellant Ellen Taylor.

TOWNSEND, J.   The appellant Emma Daniels filed assignment of errors as follows:   "(1)   The court erred in its refusal to make findings of fact.   (2)   The court erred in refusing to make the findings of fact asked for by appellant.   (3)   The court erred in refusing to hold that the adultery complained of barred applicant's right to dower in the property of deceased.   (4)   The court erred in refusing to consider the contracts in evidence.   (5)   The court erred in allowing the applicant dower.   (6)   The court erred in refusing a new trial."

Appellant contends, under her first assignment of error, that under section 5149, Mansf. Dig. (section 3354, Ind. Ter. St.

1899), it was not only right and fair, but under said section it was necessary, that the lower court should "make findings of fact." Said section is as follows: "Upon trials of questions of fact by the court, it shall state in writing the conclusions of fact found separately from the conclusions of law"—and that, by reason of the refusal of the court so to do, appellant was compelled to bring up the evidence by bill of exceptions, at much expense; that by the refusal of the court "to make the findings of fact asked for by appellant," which is her second assignment of error, "it is necessary to run through the entire testimony to see what the legal inferences are, and to draw conclusions therefrom in the first instance." Why the court refused, as requested, does not appear; but is it not probable that the court, in the event of an appeal, was of the opinion that this court could with better understandng pass upon the questions presented by the record from an examination of the entire evidence, than to be limited to findings of fact made by the court? It is not contended that the refusal of the court to make the findings requested is reversible error. At least, no authority is cited to sustain such a contention.

The third assignment of error was the refusal of the court "to hold that the adultery complained of barred applicant's right to dower in the property of the deceased." The adultery of the applicant, Ellen Taylor, wife of deceased, is conceded; but there was no divorce from the deceased, though they had lived separate and apart from each other for several years. After the death of the husband, the applicant, Ellen Taylor, having been appointed administratrix of her husband's estate, filed her petition for allowances under the statute, as a widow, and subsequently her petition for allowance of dower. To these applications the appellant, Emma Daniels, one of the heirs, and daughter of deceased, files objections. The question under this assignment is, then, does adultery bar dower? It is conceded that at common

law it does not. It appears that the statute of Westminister II, 13 Edw. I, "made adultery in the wife, accompanied with elopment, a forfeiture of dower by way of penalty." Appellant insists that under the act of May 2, 1890, c. 182, 26 Stat. 81, the common law of England, and the statutes of the British Parliament in aid of same, shall be the rule of decision in this jurisdiction. But that adoption was simply by adopting and putting in force the twentieth chapter of Mansfield's Digest (chapter 12, Ind. Ter. St. 1899), so far as the same is applicable; and by the same act of May 2, 1890, the fifty-third chapter of Mansfield's Digest (chapter 23, Ind. Ter. St. 1899), in relation to dower, was adopted and put in force. It therefore obtains that the rule of decision for this court to follow is the construction of the Arkansas statute on the subject of dower by the Supreme Court of that state. In Wood vs Wood, 59 Ark. 441, 27 S. W. 641, 28 L. R. A. 157, 43 Am. St. Rep. 42, the court, in discussing the statute of Westminister II, and its re-enactment in the state of New York in 1787, quotes from Reynolds vs Reynolds, 24 Wend. 193, to explain what is an identical provision to section 2578, Mansf. Dig. (section 1866, Ind. Ter. St. 1899), which is as follows: "In case of divorce, dissolving the marriage contract for the misconduct of the wife, she shall not be endowed"—was construed to mean in that state. It says: ' "In 1830 the act of 1787 was repealed, and, after declaring that a widow shall be entitled to dower, a new provision was made, in the following words: 'In case of divorce dissolving the marriage contract, for the misconduct of the wife, she shall not be endowed.' 1 Rev. St. (1st Ed.) p. 741, § 8 (part 2, tit. 3, c. 1). Under this statute the adultery is not enough. It must be followed by a divorce dissolving the marriage contract. This brought us back to the common law as it stood before the statute of 13 Edw. I, for, as we have already seen, adultery did not work a forfeiture at common law." The court then proceeds: "But there is no statute in this state limiting the dissolution of the marital ties to

either party. Under the statutes the courts can impose on the husband the obligation to support the divorced wife by way of alimony, but in a divorce a vinculo the dissolution of the marriage is absolute. The common law in this respect is unrepealed. Here no quasi marital relation or condition exists, after a divorce from the bonds of matrimony has been granted, upon which the right to dower can attach. Under the statutes of this state, the widow only is entitled to dower. It is true that the language of section 2578 of Mansfield's Digest indicates the opinion that the wife would be entitled to dower if the divorce should be granted on account of the misconduct of the husband, but, as said by Chief Justice Marshall in Postmaster General vs Early, 12 Wheat. 148, 6 L. Ed. 577, 'a mistaken opinion of the Legislature concerning the law does not make law.' Endlich on Statutes, § 372." Appellant cites to support his contention that adultery bars dower section 1058, Kerr on Real Property, in part as follows: "The statute of Westminister has been substantially re-enacted in some of the states, and is to be regarded as a part of the common law in those states where not re-enacted in terms." And the author, to support his text, cites 4 Kent's Com. (13th Ed.) 53, which states as follows: "The statute of Westm. II, 13 Edw. I, made adultery in the wife, accompanied with elopement, a forfeiture of dower, by way of penalty; but reconciliation with the husband would reinstate the wife in her right. The statute was re-enacted in New York in 1787, and has undergone a very material modification in the new Revised Code. The same provision was made by statute in Connecticut; and there is so much justice in it that an adulterous elopement is probably a plea in bar of dower in all the states in the Union which protect and enforce the right of dower." We have examined the cases cited with some degree of care, and in every instance, so far as we have been able to discover, the decisions are based upon some statute. The note to 4 Kent, p. 53, is as follows: "Laws of New York, Sess. 10, c. 4, § 7; New York

Revised Statutes, vol. 1 (1st Ed.) p. 741, § 8 (part 2, tit. 3, c. 1). The statute of 1787 barred the wife of dower who eloped and lived with an adulterer, unless her husband was subsequently reconciled to her. The new Revised Statutes have abridged this ancient bar by confining it to cases of a dissolution of the marriage contract, or else making it to depend on conviction of adultery in a suit by the husband for a divorce. It is declared that, 'in case of divorce dissolving the marriage contract for the misconduct of the wife, she shall not be endowed.' See vol. 1, p. 741 (Rev. St. (1st Ed.) pt. 2, tit. 3, c. 1). Upon this provision it may be observed that, in case of a divorce a vinculo, dower would cease, of course, and no such statute provision was necessary; and if there should be no divorce, or the husband should die before he had time or the means to obtain it, the adultress could sue for and recover her dower." We can find no decision of Arkansas construing the statute of that state that holds that adultery bars dower. We therefore conclude that the court committed no error in granting dower to the applicant.

The fourth, fifth, and sixth assignments are considered together by appellant, and it seems to be well settled in Arkansas that a release of dower in real estate by a wife to a husband is a nullity. In Bowers vs Hutchinson (Ark.) 53 S. W. 401, 402, the court said: "The deed which constituted the defense in this action was without effect as a relinquishment of dower in real estate. The statutes of this state provide that a widow shall have dower in 'all the lands whereof her husband was seised of an estate of inheritance at any time during the marriage, unless the same shall have been relinquished in legal form.' To relinquish her dower in any land of her husband the statutes require her to join in the conveyance thereof, and to voluntarily appear before a proper court or officer, and, in the absence of her husband, declare that she had, of her own free will, signed the relinquishment of dower for the purposes contained and set

forth in the conveyance, without compulsion or undue influence of her husband." In Pillow vs Wade, 31 Ark. 678: "This court held that a release of dower by a wife to her husband was a nullity, and cited Carson vs Murray, 3 Paige, 503, to sustain its ruling. In that case (Carson vs Murray) a husband and wife agreed to separate, and executed articles of separation, by which the husband agreed to pay to the wife an annuity of $125 per annum during her life, as alimony, and the wife agreed to release her right to dower in his estate. The court sustained the articles · as to the annuity, but held that the wife could not relinquish her dower in the real estate of her husband by executing a release to him, or in any other way than by joining with him in a conveyance to a third person." In this case, there being no realty, the dower applied for is in the personal estate, which is provided for under section 2591, Mansf. Dig. (section 1879, Ind. Ter. St. 1899), as follows: "A widow shall be entitled, as part of her dower, absolutely and in her own right, to one-third part of the personal'estate, including cash on hand, bonds, bills, notes, book accounts and evidences of debt whereof the husband died seized or possessed." But appellant contends that by reason of certain agreements entered into between the applicant and her husband in August, 1887, dower in personal property was barred. What are such agreements based upon? In Bowers vs Hutchinson the court further says: "In this country the courts, as a general rule, have enforced covenants and promises in deeds of separation relating to the maintenance of the wife and property, provided they are based upon a sufficient consideration, are fair and equal, are reasonable in their terms, and are not the result of fraud or coercion, and the separation has actually taken place when the agreement is entered into, or immediately follows." In Daniels vs Benedict, 97 Fed. 367, 38 C. C. A. 592, Judge Sanborn, in delivering the opinion of the court, said: "Repeated decisions of the courts of this country announced the same conclusions, and enforced the performance of these con-

.tracts, until in 1869, in Walker vs Walker's Ex'r. 9 Wall. 743, 750, 19 L. Ed. 814, Mr. Justice Davis, in delivering the opinion of the Supreme Court, declined to discuss the question, and declared that 'contracts of this nature, for the separate maintenance of the wife through the intervention of a trustee, have received the sanction of the courts in England and in this country for so long a period of time that the law on the subject must be considered as settled.' Carson vs Murray, 3 Paige, 483, 501; Wells vs Stout, 9 Cal. 480, 493; Walker vs Beal, 3 Cliff. 155, 166, Fed. Cas. No. 17,065; Hutton vs Hutton's Adm'r, 3 Pa. 100; Dillinger's Appeal, 35 Pa. 357, 362; Hitner's Appeal, 54 Pa. 110, 115; Com. vs Richards, 131 Pa. 209, 218, 18 Atl. 1007; In re Scott's Estate, 147 Pa. 102, 110, 23 Atl. 214; Thomas vs Brown, 10 Ohio St. 247, 250; Bettle vs Wilson, 14 Ohio, 257, 269; Garver vs Miller, 16 Ohio St. 528, 531; Doyle vs Doyle, 50 Ohio St. 330, 34 N. E. 166; Dutton vs Dutton, 30 Ind. 452; Loud vs Loud, 4 Bush, 453, 461; Robertson vs Robertson, 25 Iowa, 350; Going vs Orns, 8 Kan. 87. In view of the public policy of the nation upon this subject, evidenced by these decisions, and of the policy of the state of Colorado, declared by the acts of its Legislature and the decisions of its courts to which we have adverted, there is no escape from the conclusion that an agreement of separation between a husband and wife, whereby he provides for her separate maintenance, and she covenants to release all her claims upon his estate, is lawful, and presumptively valid, without plea or proof of its equity, reasonableness, or fairness to the wife.''

The agreement for separation and release of dower in this case is as follows.

"Saline District, August 5th, 1887. This is to certify that we, George W. Taylor and Ellen Taylor, his wife, have this day agreed to dissolve our privileges and rights together as man and wife on the following terms and conditions:

"1.   I, George W. Taylor, agree to the terms as follows: I agree to separate myself from wife and not assail her fair name and give her a divorce, but I must have my individual property and part the care and keeping of my child and the privilege of schooling the child, and further, I must not be barred of my rights as a citizen, as I will then be able to take care of my child and do for it in its own country.

"2nd.   As to the conditions of my agreeing to separate myself from her I am willing to live with her and take care of her and her children, but while she is not satisfied with me I go into this dissolution to satisfy Mrs. Taylor and agree to be forever satisfied.

"3rd.   I, EllenTaylor, wife of the said George W. Taylor, agree to the terms asked by Mr. Taylor and I agree to give him his own property and part of the care and keeping of the child, also the schooling, and further, to allow him a divorce at any time and not put any plea against his right as a citizen and I must have all my own property.

"4th.   As to condition I agree that I am not willing to live with Mr. Taylor on the ground I am not satisfied with him as a husband and in signing this I forever debar him of any privileges with me or at my house as his wife again.

("Signed)                          G. W. Taylor.
                                   "Ellen Taylor.

"Witness:   W. W. Dudley, C. McRidge."

"Know all men by these presents that I, Ellen Taylor, wife of George W. Taylor, have this day relinquished to the said George W. Taylor any and all dower right in trust or claim I

might have as his wife to his place known as the Downing improvement and all his own stock, etc. etc., of his own individua property, and I hereby in these presents relinquish myself from him and all claims against him and his. Done this August 5th, 1887.

"(Signed)                                    ELLEN TAYLOR.

"Witnesses:   (Signed)   W. W. Dudley, C. McRidge."

Agreements for separation are sustained by the courts almost universally, but they must be fair and reasonable, and based upon sufficient consideration.  What consideration supports the above agreements?  What does the husband agree to do for the maintenance of the wife?  Absolutely nothing, except to remove himself and his property away; and he stipulates that he shall not lose his citizenship by reason of leaving her.  We have found no case upholding an agreement where there is absolutely no provision for the wife's maintenance, or for division of property or contribution to her, as much as shall be just, considering the condition of the husband's property interests. We hold the contracts void for want of any consideration to support them.  The appellee has taken a cross-appeal from the decision of the court refusing the allowances provided by statute. But upon what authority the court acted, we are not advised. None has been cited in the briefs, and there is no limitation in the statute itself.  The judgment of the court will be modified, granting the statutory allowances, and the case will be remanded to the probate court, with directions to proceed with the same in accordance with this decision.

Modified and remanded.

RAYMOND, C. J., and CLAYTON, J., concur.