## Scott's Estate. (2)　Scott's Appeal. (2)

*Husband and wife—Agreement to live separate.*

An agreement between husband and wife to live separate and apart, if based upon a good consideration and reasonable in its terms, will be as valid and binding upon the wife as upon the husband: Hutton v. Hutton, 3 Pa. 100; Dillinger's Ap., 35 Pa. 357; Hitner's Ap., 54 Pa. 110; Speidel's Ap., 107 Pa. 18; Commonwealth v. Richards, 131 Pa. 209, cited.

*Release of interest in husband's estate.*

A wife who, by such an agreement fully performed in good faith during the lifetime of her husband, released him " from all duties, liabilities and obligations of every kind whatsoever, which otherwise she might or could claim under or by virtue of the marriage relation," is barred from claiming any share of his estate under the intestate laws.

Argued Nov. 6, 1891, appeals Nos. 313, 319, Oct. T., 1891, by John F. Scott, et al., from decree of O. C. Allegheny Co., Sept T., 1891, No. 114, dismissing exceptions to adjudication. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

On January 13, 1891, the first and partial account of John F. Scott and William Stewart, executors of the will of John Scott, deceased, showing a balance for distribution of $30,161.27, was called for audit.

It was shown that the testator died on March 24, 1889, leaving to survive him a widow, Olivia R. Scott, and the following children, to wit: Lucy Painter, Mary O. Burns, John F. Scott, Robert R. Scott, David S. Scott, William W. Scott, Charles V. Scott, Ella C. Scott, and Herman G. Scott; also, a grandchild, John Sample Scott; a child of Maurice Scott who had been absent and unheard of for about twelve years. Herman G. and Ella C. Scott were minors, having the Fidelity Title & Trust Company for their guardian; John Sample Scott also was a minor, having Dr. John Sample for his guardian.

The will of John Scott, deceased, was dated March 16, 1889, was duly admitted to probate on April 1, 1889, and letters thereon issued to John F. Scott and William Stewart as executors. On Sept. 24, 1890, on the petition of William W. Scott, an appeal was allowed from the decree of the register

admitting said will to probate, and this appeal was pending and undetermined at the date of the audit; See Scott's Estate (1), ante, 89.

Testimony was adduced to the effect that for a time prior to January 1, 1886, the said John Scott and Olivia R. Scott, his wife, had been living separate and apart; that, to January Term 1886, proceedings in divorce a mensa et thoro were instituted on the libel of the wife; that, proposals of adjustment being made, Mr. Scott submitted a statement of the condition of his affairs, whereby it appeared he was the owner of real and personal estate valued at about forty thousand dollars, but was so indebted that if his creditors had pressed him he would have been insolvent; that the wife was then the owner of valuable real estate, stocks, and money in bank, which had been given to her, as was claimed, in their better days; and that, on May 18, 1886, a separation agreement was executed of which the following is a copy :

" Agreement made May 18, 1886, between John Scott, of the city of Pittsburgh, of the first part, and Mrs. Olivia R. Scott, wife of said John, of the second part, and Josephine Rodgers, sister and next friend of said Olivia R. Scott, of the third part: Whereas unhappy differences have arisen between said John Scott and his said wife, and they have been for a considerable period of time living separate and apart, and have mutually agreed to a separation and to continue to live separate and apart from each other; and whereas the said Olivia R. Scott has commenced proceedings in the court of common pleas No. 2 of Allegheny county, at No. 325 January Term 1886, for a divorce a mensa et thoro, and for alimony ; now, therefore, for the purpose of amicably settling the said controversy and all differences between the said parties of the first and second part, the parties hereto have agreed and do hereby agree as follows:

" That they, the said John Scott and Olivia R., his wife, shall henceforth and during the period of their lives continue to live separate and apart from each other, as if divorced ; and that she, the said Olivia R., shall have, enjoy, and control her separate estate and property as fully and absolutely as if she were sole and unmarried ; and that she shall, in like manner, enjoy, control and dispose of all [her] property and estate, including the fruits of her own industry and labor, together with

all other property which she may in any manner acquire in the future, at her own will and pleasure, and without any interference therein by her said husband."

"And in consideration of the premises, the said John Scott hath agreed, and doth hereby agree to secure (by such security as shall be satisfactory to the said Olivia R. Scott), and pay to her the annual sum of one thousand dollars in quarterly sums or payments of two hundred and fifty dollars each, during her natural life, for her maintenance ; and further, that he will, upon her request in writing, execute and deliver to her, or to such person as she shall name and for her benefit, such other or further instrument or deed in writing as may be necessary to give her full and absolute control of her real estate situate in the Nineteenth ward, Pittsburgh, and fronting on Larimer Avenue ; and that he (John Scott) will and hereby does release all present or future right as tenant by curtesy or otherwise in or to said real estate or otherwise.

"In consideration of the premises, the said Olivia R. Scott and Josephine Rodgers, her next friend, do hereby release and forever discharge the said John Scott, his executors, administrators, etc., from all liability to said Olivia R. Scott other than that assumed by him in his contract; and they also release, acquit and discharge the said John Scott from all duties, liabilities and obligations of every kind whatsoever, which otherwise she, the said Olivia R. Scott, might or could claim under or by virtue of the marriage relation between her and the said John Scott ; and they, the said parties of the second and third part agree, upon their part, that they shall keep, observe and maintain this contract in good faith and without breach or default.

"It being further understood and agreed that the rights of Olivia R. Scott, under this contract, may be enforced (if necessary) by suit of action in her name, by her said next friend, or by any other individual acting for her as next friend, at her instance.

"In witness whereof, The said parties have hereto set their hands and seals, the day and year first above written."

The foregoing agreement was duly acknowledged by both parties on the day of its date ; and afterward, the husband and wife continued to live separate and apart until the death of the

husband, the provisions of the agreement being performed in good faith by both parties. On the audit, claim was made on the part of the wife to be awarded one third of the balance for distribution, as the decedent's widow ; this claim was resisted by the legatees.

The auditing judge, OVER, J, filed the following opinion and decree :

When the agreement of separation was entered into between John Scott, the decedent, and his wife, Olivia R. Scott, his financial condition was such that if his creditors had pushed him, it is highly probable that all of his property would have been exhausted in the payment of his debts. She then owned the homestead of five acres and mansion house on Larimer Avenue, Pittsburgh, valued at $50,000, $4,500 of dividend-paying stocks, and had $1,450 in cash, all of which had been given her by him after their marriage. Subsequently, by the general advance in values, and a speculation in stocks by which Mr. Scott made $20,000, his estate enhanced in value, so that at his death on the twenty-fourth day of March, 1889, it was worth $350,000. In view of all the surrounding circumstances, the agreement was reasonable in its provisions for Mrs. Scott, even if by it they mutually released, as is claimed, any interest they might have in the estate of each other ; and, as they were living apart when it was made, and continued to do so until his death, it is valid, and the only question is as to its effect.

It is claimed that under it he released any interest he might have as surviving husband in her estate, and that it would therefore lack mutuality if she did not release any interest she might have in his estate as his widow.

Whilst the language of the covenants made by him in the first part of the agreement is very general and broad, they do not appear to have the effect claimed. They are substantially that his wife shall enjoy, control, and dispose of all her property and estate, the fruits of her own industry and labor, and all property she may in any manner acquire in the future, as fully and absolutely as if she were sole and unmarried, at her own will and pleasure, without any interference therein by her husband. This gave her the absolute control and right to dispose of her personal property during life. But, in view of the subsequent covenants made by them, it would scarcely be held

that he relinquished his right of inheritance in her estate ; and clearly, if she had died prior to him, intestate, he could have participated in the distribution of it, as surviving husband, under the intestate laws.

He next covenants to pay her $1,000 per annum during her life, which he secured to her by mortgage on real estate, and then covenants to execute and deliver "such other or further instrument or deed in writing as may be necessary to give her full and absolute control of it her real estate situate in the Nineteenth ward, Pittburgh, and fronting on Larimer Avenue, and that he (John Scott) will and hereby does release all present or future right as tenant by curtesy, or otherwise, in or to said real estate or otherwise." This clause of the agreement shows that the parties themselves did not consider that he had released his right of inheritance by his previous covenants, as, if he had, this specific release would not have been necessary. The reasons for making it are obvious. The property was used as a homestead ; no revenue was derived from it, and if she could not sell all or part with it, her annuity would be exhausted in paying taxes and keeping it up, leaving her nothing to live on. It was absolutely necessary, therefore, that she should have the power to sell it, discharged of his curtesy.

In the covenants made by Mrs. Scott there does not seem to be anything but a release of her husband, his executors and administrators, from his personal liability and obligation to her, growing out of their marriage relation. There is not a word about her rights as surviving widow, nor her interest in his estate. The agreement was substituted for the proceedings in divorce a mensa et thoro. Under it, they lived apart, as if a divorce had been granted, the annuity being in lieu of alimony. Had the divorce been granted, Mrs. Scott would still have been entitled to her distributive share under the intestate laws ; and the only considerable advantage she seems to have acquired by the agreement, is that the annuity does not cease, as alimony would, at his death. But this is not sufficient to destroy its mutuality, and as creditors were not prejudiced, he had the right to settle the annuity upon her for life. It does not appear from a careful consideration of the whole agreement that either had in contemplation the cession of the right of inheritance in the estate of the other, except as to his curtesy in the

real estate in the Nineteenth ward. And, as Mrs. Scott clearly did not release her right of inheritance as surviving widow, she is entitled to participate in this distribution.

Final distribution of the fund in the accountant's hands cannot be made until the appeal from the register's decision admitting a paper to probate, as the decedent's last will, is disposed of,* but as she will not be affected by the decision of that question, distribution will now be made to her, and also to the children named in it as legatees, to an amount not to exceed what they would take under the intestate laws. And refunding bonds will be required of them, conditioned that in case any claim be recovered against the estate, they will refund their ratable and equitable proportion of it, and of the costs.

And now, to wit, January 13,1891, this matter came on for hearing, audit, and distribution at this term, and testimony taken ; and thereupon, upon consideration thereof, it is ordered, adjudged, and decreed that the funds in the hands of accountant, that is, $30,161.27, be paid in accordance with the schedule of distribution hereto attached, unless an appeal be taken therefrom within twenty days.  ·

—Exceptions to the decree filed by John F. Scott and others, legatees, were dismissed. Exceptants appealed.

*Errors assigned* were (1) allowance of claim of Olivia R. Scott; (2) ordering that any of the funds in the hands of the accountants should be paid to Olivia R. Scott; (3) dismissal of exceptions filed to the distribution.

*John Dalzell*, with him *William Scott, George B. Gordon* and *David Q. Ewing*, for the appellants.—The rule is settled in Pennsylvania that an agreement between husband and wife for a separation is valid, if its object be actual and immediate, and it is made upon a good consideration and contains nothing unreasonable ; and, if it is actually performed by both parties, in good faith, its provisions will be as binding upon the wife as upon the husband: Agnew's Ap., 22 W. N. 129; Hutton v. Hutton, 3 Pa. 100; Dillinger's Ap., 35 Pa. 357 ; Hitner's Ap., 54 Pa. 110; Speidel's Ap., 107 Pa. 18; Commonwealth v. Richards, 131 Pa. 209. The agreement, in this case, conforms

---

* See Scott's Est. (1), *ante* 89.

to all the requirements above mentioned; and such agreements are enforced with respect to their provisions excluding a widow from her dowry or other share of her husband's estate after her death: Dillinger's Ap., supra; Hitner's Ap., supra. Under the authorities, the contract is to be construed according to the apparent intent of the parties, and in the construction of the covenants of the wife, the usual rule applies that the words are to be taken most strongly against her.

*A. M. Brown*, with him *John D. Brown*, for the appellee: The quantum and nature of the interest of a widow in the real and personal estate of her husband, is defined and established by § 1, Act of April 8, 1833, P. L. 316 ; Diefenderfer v. Eshleman, 113 Pa. 305; Lazear v. Porter, 87 Pa. 513; Miller v. Leidig, 3 W. & S. 458; Gourley v. Kinley, 66 Pa. 272; 1 Woerner on Administration, 242, 264, 265; Schall's Ap., 40 Pa. 170. It does not depend upon the family relation, and is not barred by the wife's desertion: Nye's Ap., 126 Pa. 341; Holbrook's Est., 20 W. N. 79. And see Ellmaker v. Ellmaker, 4 W. 89; Webb v. Evans, 1 Binn. 572; McGrew v. Hart, 35 Pittsb. L. J. 166 (10 Cent. R. 312) ; McCullough v. Allen, 3 Y. 10. It is a clear legal right, and cannot be divested except upon a full knowledge by the widow of her rights: United States v. Duncan, 4 McLean 99; Duncan v. Duncan, 2 Y. 302; Lazear v. Porter, 87 Pa. 517; Graff v. Smith, 1 Dall. 484; Jones's Ap., 14 W. N. 313.

Dillinger's Ap., 35 Pa. 359, and Hutton v. Hutton, 3 Pa. 100, were founded upon the express agreement of the wife to release her dowry on thirds, fairly made; but in this case, there is not a word in the agreement touching her rights in the estate of her husband, as surviving widow; while, on the other hand, there is an express relinquishment by the husband of his rights in her property in the Nineteenth ward. Articles of separation are to be strictly interpreted: Slatter v. Slatter, 1 Y. & C. 28; Ellmaker v. Ellmaker, 4 W. 89, 90, 91; Ireland v. Ireland, 12 Atl. R. 184. Although the courts will enforce a deed of separation, in its property incidents, when actually executed by separation, they are to be supported only on equitable principles, and therefore upon terms. Hence, such agreements are interpreted strictly, and the wording and language must be clear and explicit and not doubtful.

OPINION BY MR. CHIEF JUSTICE PAXSON, January 4, 1892.

This case arises upon the distribution of the estate of John Scott, late of the county of Allegheny. The auditing judge gave one third of the fund to Olivia R. Scott, widow of the decedent. Upon exceptions filed, the court below sustained the auditing judge, and these appeals were entered by and on behalf of Mr. Scott's children.

It appears that many years ago unhappy differences had arisen between Mr. Scott and his wife, resulting, in the year 1886, in articles of separation. The agreement is dated May 18th of that year, and after reciting the differences referred to, and the fact that proceedings for a divorce a mensa et thoro had been commenced, provides:

" That they, the said John Scott and Olivia R., his wife, shall henceforth and during the period of their lives continue to live separate and apart from each other, as if divorced; and that she, the said Olivia R., shall have, enjoy, and control her separate estate and property as fully and absolutely as if she were sole and unmarried; and that she shall in like manner, enjoy, control, and dispose of all [her] property and estate, including the fruits of her own industry and labor, together with all other property which she may in any manner acquire in the future, at her own will and pleasure, and without any interference therein by her said husband."

It was then further provided that the said John Scott should settle upon her an annuity of $1,000, payable quarterly, and release all his interest in her own real estate, situate in the Nineteenth ward of the city of Pittsburgh. These stipulations appear to have been complied with. The agreement then continues:

" In consideration of the premises, the said Olivia R. Scott and Josephine Rodgers, her next friend, do hereby release and forever discharge the said John Scott, his executors, administrators, etc., from all liability to said Olivia R. Scott other than that assumed by him in this contract; and they also release, acquit, and discharge the said John Scott from all duties, liabilities, and obligations of every kind whatsoever, which otherwise she, the said Olivia R. Scott, might or could claim under or by virtue of the marriage relation between her and the said John Scott; and they, the said parties of the second part, agree

upon their part that they shall keep, observe, and maintain this contract in good faith and without breach or default."

We learn from the opinion of the learned judge below that " when the agreement of separation was entered into between John Scott, the decedent, and his wife, Olivia R. Scott, his financial condition was such that, if his creditors had pushed him, it is highly probable that all his property would have been exhausted in the payment of his debts. She then owned the homestead of five acres and mansion house on Larimer Avenue, Pittsburgh, valued at $50,000, $45,000 of dividend-paying stocks, and had $1,450 in cash, all of which had been given to her by him after their marriage." Under these circumstances, we quite agree with the learned judge below that the provision for Mrs. Scott was reasonable, even treating the agreement as a release by her of all interest in his estate after his death.

It appears that, by a fortunate speculation and subsequent rise in values, the estate of Mr. Scott was largely increased, and at the time of his death amounted to about $350,000. It is also undisputed that Mr. Scott and his wife lived apart to the time of his death. The validity of the agreement is not denied. It is settled law in this state that an agreement between husband and wife to live separate and apart, if based upon a good consideration, and reasonable in its terms, and actually carried into effect by both parties, will be as valid and binding upon the wife as upon the husband: Hutton v. Hutton, 3 Pa. 100; Dillinger's Ap., 35 Pa. 357; Hitner's Ap., 54 Pa. 110; Speidel's Ap., 107 Pa. 18; Commonwealth v. Richards, 131 Pa. 209. The validity of the agreement not being in dispute, it remains to consider its legal effect. Whatever may be its phraseology, it is not to be supposed for a moment that Mr. Scott intended to make a settlement of a considerable portion of his estate upon his wife, and at the same time allow her a full share of the balance in case of his death. No matter where the fault may lie in cases of separation, the husband does not usually regard his wife as a saint, and make a provision for her in excess of what he would probably do for a wife who retained his affection and respect; and, so far as the wife is concerned in such cases, it is safe to assume that she intended to get all she could. But what the respective parties intended is not of much moment, unless such intent be properly expressed, and carried out by apt words, in the agreement of separation itself.

The release above cited is very broad in its terms. It releases the said Scott, his heirs, executors, administrators, etc., "from all liability to said Olivia R. Scott other than that assumed by him in this contract." And, further: "They also release, acquit, and discharge the said John Scott from all duties, liabilities, and obligations of every kind whatsoever, which otherwise she, the said Olivia R. Scott, might or could claim under or by virtue of the marriage relation between her and the said John Scott," etc. Here we have, *first*, a release to Scott, his heirs, executors, etc., from all liability except such as may arise under the contract; and, *second*, from all duties, liabilites, and obligations which she might claim by virtue of the marriage relation. This claim is made upon the administrators of Mr. Scott's estate by virtue of the marriage relation. It can arise in no other way. It is not a claim under the contract, but against and in defiance of it. She claims as widow, and she is widow only by virtue of the marriage relation. We are of opinion that she has no standing as widow to claim a share of the estate. This view we think, is fully warranted by the terms of the release. Moreover, we have no doubt it is in accord with the intention of the parties at the time the agreement was executed.

The decree is reversed, at the costs of the appellee, and it is ordered that distribution be made in accordance with this opinion. C.