(Surrogate's Court, Westchester County. July, 1895.)

1. HUSBAND AND WIFE—SEPARATION AGREEMENT—VALIDITY.
    A separation agreement, whereby the wife relinquishes her claim to her husband's property, and to support by him, and also her right of dower, is invalid.

2. SAME—RESCISSION.
    A separation agreement is rescinded by subsequent cohabitation and resumption of the marital relation.

Judicial settlement of the accounts of James Smith as administrator of Peter Smith, deceased.

Francis Larkin, for administrator.
John Gibney, for contestant.

SILKMAN, S. The principal question to be determined in this case is as to the validity of the agreement made between Mary Smith and Peter Smith on February 1, 1885. The agreement recites:

"Whereas, the parties are husband and wife, and that they cannot get along together in that relation, therefore they mutually agree to separate and live apart forever, and release each other from all marital rights."

The agreement then provides:

"That the said party of the first part, for and in consideration of the sum of six hundred dollars to her in hand paid by the said party of the second part, her husband, the receipt whereof is hereby acknowledged, does hereby release and discharge the said party of the second part, her husband, from all

claim she now has or she may hereafter have in any property he now owns or shall hereafter acquire in any way; also right of dower that she now has or may hereafter have in the real estate recently conveyed by the said Peter Smith to his five children, in which he reserved an estate for life; and for the consideration aforesaid the said party of the first part releases said party of the second part and his heirs and assigns from all support, maintenance, board, lodging, clothing, and everything else during her natural life; and said party of the first part covenants and agrees to and with the said party of the second part to maintain and support herself from this day as long as she lives, just the same as if she had never been married to the said party of the second part, and had always been a single woman."

Agreements for separation between husband and wife have never been favored by the courts, and it was early doubted whether they were not against public policy. St. John v. St. John, 11 Ves. 526. And it has been held that such agreements can only be supported where the separation has actually taken place. Carson v. Murray, 3 Paige, 483. It was said by the chancellor in Rogers v. Rogers, 4 Paige, 516:

"It is impossible for a feme covert to make any valid agreement with her husband to live separate from him, in violation of the marriage contract and of the duties which she owes to society, except under the sanction of the court, and in a case where the conduct of her husband has been such as to entitle her to a decree for a separation. The law of the land does not authorize or sanction a voluntary agreement between husband and wife; it merely tolerates such agreements when made in such a manner that they can be enforced by or against a third person acting in behalf of the wife."

See, also, Florentine v. Wilson, Hill & D. 303; Cropsey v. McKinney, 30 Barb. 47; Morgan v. Potter, 17 Hun, 403; Beach v. Beach, 2 Hill, 260; Van Order v. Van Order, 8 Hun, 315; Dupre v. Rein, 7 Abb. N. C. 256; Gilbert v. Gilbert, 5 Misc. Rep. 555, 26 N. Y. Supp. 30.

It is unnecessary to consider whether the disability which existed at common law which prevented a wife contracting with her husband has been abrogated by statute, for the reason that the agreement was executed prior to the passage of any such statute except the statute of 1849 (chapter 375), which has been expressly held not to apply to contracts between husband and wife. White v. Wager, 25 N. Y. 328. It has been repeatedly held that any attempt of a wife to release her dower to her husband is void, and it has been held in England that a separation agreement which attempted to deprive a wife of all right, present and future, in a husband's personal estate, and all right of dower and thirds, was ineffectual for that purpose. Slatter v. Slatter, 1 Younge & C. Exch. 28. The principle of this case seems to be sound, although it has been held in Pennsylvania that a similar deed cut off a wife's dower and distributive share. Dillinger's Appeal, 35 Pa. St. 357.

Conceding the validity of the agreement, I am bound to find that it was subsequently rescinded and revoked by the cohabitation of the parties. The evidence clearly shows that after the execution of this agreement they came together, and lived as man and wife. The rule of law is well settled that separation agreements are annulled by any subsequent cohabitation between husband and wife, even though such cohabitation be for ever so short a time, pro-

vided, when such cohabitation takes place, it was their intention to resume permanently the marital relation. Carson v. Murray, 3 Paige, 483. There is nothing in the evidence to show that the subsequent cohabitation was intended to be anything else than a permanent resumption of the marital relation. It being clear that the marital relation was resumed, the presumption is that permanency was intended. The separation agreement was executed in view of the separation, and was dependent upon its continuance; and when the wife resumed her place as wife the cause which led to the contract ceased, and the consideration upon which it rested disappeared. Zimmer v. Settle, 124 N. Y. 37, 26 N. E. 341. It must be assumed that when the parties rescinded the agreement of separation, and resumed their marital relations, all rights of one against the other, either in law or equity, were adjusted anl settled. It follows, therefore, that Mary Smith, now O'Brien, widow of Peter Smith, is entitled to her distributive share of his estate to which she would be entitled if no agreement had ever been entered into.

The objections to the account taken by the widow to the payments on account of the cemetery plot do not seem to be well taken. They were debts incurred by the decedent in his lifetime, and no evidence has been offered sufficient to challenge the good faith of the administrator in their payment. The burden was on the contestant to show that the debts did not exist, and that they were not paid in good faith, and, the contestant having failed in this, the objections are overruled.

Decreed accordingly.