# Mary M. Stidum, Plaintiff in Error, v. William S. Stidum, Defendant in Error.

SEPARATE MAINTENANCE—*when contract as to alimony abrogated.*
*Held,* under the evidence, that a contract fixing alimony in gross though approved by the court was by the mutual consent of the parties abrogated and rescinded.

Bill in chancery. Error to the Circuit Court of Hancock county; the Hon. HARRY M. WAGGONER, Judge, presiding. Heard in this court at the May term, 1911. Reversed and remanded with directions. Opinion filed October 14, 1911.

WILLIAM H. HARTZELL and SEYMOUR L. McCRORY, for plaintiff in error.

O'HARRA, O'HARRA, WOOD & WALKER, for defendant in error.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This writ of error is prosecuted by the complainant from a decree dismissing her bill in chancery, upon a hearing, for want of equity. The bill alleges that on December 22, 1899, the complainant and defendant were married; that they lived together as husband and wife until May 29, 1905, at which time the defendant wilfully deserted the complainant, and that they at the time of the filing of the bill, were living separate and apart without her fault; that prior to such time a child had been born to them; that on September 9, 1905, the complainant filed her bill in the circuit court asking for separate maintenance, and that on December 19, 1905, by agreement of the parties to the suit, there was a certain contract entered into, which provided that in consideration of the payment to the complain-

ant, by the defendant, of the sum of $550, she released all rights in and to his property; that said contract was approved by a decree entered in said separate maintenance proceeding, and that the cause was striken from the docket. The bill further alleges that the complainant and defendant continued to abide by the terms of said contract, until 1907, when the defendant returned to the complainant, and again lived with her as her husband, and that by mutual agreement said contract was set aside; that as a result of the latter cohabitation, the complainant became pregnant and a child was born, and that thereafter the defendant again deserted the complainant without reasonable cause, and that she was then living separate and apart from him without her fault. The bill prays for the separate maintenance of the complainant, and the care, custody and control of the children of the parties. The defendant answered denying the material allegations of the bill and setting up the contract referred to therein, as a defense to the action.

The evidence tends to show that on the 9th day of September, 1905, plaintiff in error filed a former bill against defendant, in the circuit court of Hancock county, asking for an allowance for the maintenance of herself and her children; that on October 20, 1905, the parties entered into a written contract, by which they settled the separate maintenance suit, and the complainant accepted the sum of $550 in full satisfaction of all alimony, separate maintenance for herself and the children born to her, and in full of every claim which she could have in law or in equity against the said defendant in error for maintenance and support, forever, and released the defendant from all claims which she might or could have against him, and agreed never to claim any part of any property which he might at any time acquire. The plaintiff in error was given the custody of the children, and agreed to sup-

port them at all times in the future. After the making of said contract, on December 19, 1905, a decree was entered in said cause by consent, said contract being embodied in the decree and made a part thereof. The court by such decree found that the said sum of $550 had been paid to the plaintiff in error; that the contract was fair, equitable and just, and approved the same, and decreed that said contract was a just, fair and equitable adjustment of all matters involved in said suit, and all property interests, past, present and prospective, of the respective parties, and that the same should be considered under any and all circumstances as relieving the defendant from maintaining and supporting his said wife; that she should be forever estopped from making any claim against him for maintenance and support, and under no circumstances were either of the parties to claim or have any right to any part of the property that might be owned by the other at any time, and each of the parties was ordered to carry out fully the said contract.

The evidence further shows that the sum of $550 mentioned in the contract, was borrowed by the defendant from his father; that the same was used by the complainant to purchase a home; that after the making of said contract, the defendant occasionally, during a period of two years, secretly visited his wife, the complainant, spent the evening with her, and in part at least, resumed their relations as husband and wife, as a result of which a second child was born to them; that he contributed money with which to purchase food and clothing for the children, who then lived with the complainant, but that upon discovering her condition of pregnancy he again deserted her and ceased contributing toward the support of the children. It seems to be conceded by the complainant that if the contract was still in full force and effect at the time of filing the present bill, the same was properly dismissed

for want of equity. Counsel insist, however, that the
evidence shows that such contract was abrogated by
mutual consent of the parties. The complainant testi-
fied in part as follows: ''We understood at the time we
were living together as husband and wife; we both
said we would do away with the contract; he did not
want his parents to know that we were living together
until he could get the debt paid; I helped hide him in
my home but there were people who saw him there
with me; he came one night when my sister was there
and he said he did not care for her knowing it, that
he did not care who knew so his father did not find it
out. The most he said to me was he did not want his
folks to know it. He said he owed this money and was
afraid they would not leave him anything. We said
the contract was done away with and we looked at it
we were living together. We were living together then
as husband and wife; it was talked over between my
husband and I then; after I became pregnant he left
the country at that time; he said he would be back in
a night or two; that he was going to tell his father
about it anyway and was then coming back to live with
me openly.''

The defendant's testimony is in part as follows:
''There was never any talk between my wife and I
to do away with the contract or decree of separate main-
tenance. I told my wife that I would not live with
her. I never told her I would live with her when the
debt was paid. I told her I didn't want my folks to
know I was coming there. I never made any promise
to live with her any time. My wife asked me to come
of nights. She has always begged me to live with her
again but I never agreed to under any circumstances.
I told her I wouldn't do it, on account of the way she
had done me before. I ran off and left her before,
but I did not know she was in the shape she was in. I
found out her condition but did not go back. Then I

Stidum v. Stidum, 164 Ill. App. 261.

kept coming there until she was in that condition again. A good many times she begged me to come and live open. She told me that was no way to do, to come there of nights; wanted me to live with her as a husband ought to. I kept going there of nights and having intercourse with her from time to time with my two children there in the house. They were supposed to be mine. I do not know they are mine, I could not swear they are mine, I haven't any reason to believe they weren't mine. I do not charge they were not. I haven't any reason to believe the last one isn't mine. The last night I was there I told her I would be back again. I went home, stayed there a day or two and then left the country, because I knew my folks would find it out, it would cause trouble. I went to Nebraska on the 15th of March, and came back home on the 3rd of July. I have been giving my wife money right along. The minute I quit going there, I quit giving her money. I gave her the money because she asked for it; she told me the children needed clothes and something to eat and asked for money, and I gave it to her. She told me she washed for a living and wanted me to come back and live with her. She said that she had a hard time to keep the children and that she had to wash to make a living and I said that I won't come back with you at all, I won't live with you.''

We shall not quote further from the record. It will suffice to say that after a careful examination and consideration thereof, we are of opinion that the position of the complainant is warranted by the evidence; that the subsequent conduct of the parties impliedly, at least, sufficiently shows an abandonment of the contract. The despicable actions of the defendant as disclosed by his own testimony, impel us to the belief that his statements are not entitled to equal credit with those of the complainant and her testimony is to the effect that the parties expressly agreed to nullify the

contract. Waiving, however, that question, the defendant must be held by his conduct in resuming in part, at least, the marital relations, to have impliedly consented to a mutual abrogation and abandonment of the contract. While the former decree properly determined that the contract was understandingly made, and that the provisions thereof fairly adjusted the property rights of the parties as they then existed, it was not effective finally and irrevocably to adjudicate the rights of the parties and their offspring, the chancellor in that proceeding being without jurisdiction to do so. It manifestly was not a decree for separate maintenance under the statute, for it does not contain the essential finding that the wife was living separate and apart from her husband without her fault. But if it could be so considered, and the amount paid as the consideration for the contract be treated as an allowance in gross, such gross allowance would have been erroneous for the reason stated in Hunter v. Hunter, 121 Ill. App. 380, and Raab v. Raab, 150 Ill. App. 555.

When equitable principles are applied to the facts disclosed by the record, the attempt of the defendant to secretly enjoy the benefits of the marital relation, and at the same time escape the duties and responsibilities attendant thereon, through the medium of the contract in question, must fail. We are of opinion that the evidence was sufficient to support the material averments of the bill, and that the chancellor erred in not granting the relief prayed.

The decree will be reversed and the cause remanded with directions to the circuit court to proceed in accordance with the views herein expressed.

*Reversed and remanded with directions.*