ESTATE OF PATRICK MENIHAN, DECEASED.

[No. 15,282; May 12, 1915.]

**Husband and Wife—Contract Between for Settlement of Property Rights.**—Where husband and wife, she having instituted an action for divorce and they having subsequently arrived at an adjustment of their differences both as to their properties and their domestic affairs, enter into an agreement whereby they adjust their property rights and thereafter live together without any change in their matrimonial relations, the contract is valid under section 158 of the Civil Code. Such an agreement is a settlement of property rights, not a contract for separation, and the decisions on separation agreements are therefore not absolute authority. The agreement is not invalidated by a provision that the wife will make no claims upon the husband for her support.

Application for settlement of final account and distribution.

J. R. Leppo and Charles W. Lynch, for Michael Menihan, as executor and individually.

William A. Kelly, for widow, Margaret Menihan.

WHAT THE RECORD SHOWS.

COFFEY, J. The record shows that Patrick Menihan died intestate in San Francisco on March 6, 1913. By his will he nominated his wife Margaret and his brother Michael executrix and executor. His wife declined to petition or join with Michael in the application for probate, and the brother was appointed by the court in due season and entered upon the discharge of his duties, and continued in the customary routine of administration until May 28, 1914, when, as such executor, he filed his first and final account with a petition for its settlement and the distribution of the residue of the estate according to the terms of the will, alleging that the entire estate as inventoried and appraised was the separate property of the decedent.

On September 25, 1914, the widow filed objections to the account, alleging that the executor had failed to charge himself with the sum of $6,322.45 and interest, collected by him

from the German Savings Bank, claimed by the widow as community property.

In addition to this objection, the widow filed on the same day an opposition to the distribution on the ground that all of the estate left by decedent was community property, and asking that one-half thereof be distributed to her under the statute in such case made and provided.

On September 29, 1914, Michael Menihan, as executor and individually, filed an answer denying this claim and averring the contrary, and, as a separate defense and a bar to the widow's claim, set forth and pleaded a written agreement between her and the decedent executed on January 23, 1901, adjusting and determining their property rights.

### THE PRINCIPAL QUESTION BEFORE THE COURT.

It is agreed that the principal question before the court on this hearing is to determine the force and effect to be given the contract entered into between Patrick Menihan and Margaret Menihan, husband and wife, on January 23, 1901.

In order to present this question fully this contract is here inserted:

### "MEMORANDUM OF AGREEMENT.

"Made this 23d day of January, A. D. 1901, between Patrick Menihan, of the City and County of San Francisco, State of California, party of the first part, and Margaret Menihan, his wife, of the same place, party of the second part, Witnesseth: That,

"Whereas, unhappy differences have arisen between the parties hereto recently, and an action was brought by the party of the second part, in the Superior Court of the City and County of San Francisco, State of California, against the party of the first part, praying for a decree of divorce and certain other relief, including a reconveyance to her from the party of the first part, defendant in said action, of certain property in said complaint described, and for certain other relief, including alimony and the sum of seventy-five dollars ($75.00) per month during the pendency of the suit, and a reasonable amount, to be fixed by the Court, as and for costs and counsel fees and for an accounting and division of the community property; and,

"Whereas, the parties to said action and to this agreement, being desirous of avoiding further litigation and the necessity of a divorce, have arrived at a settlement of their differences, both as to their domestic affairs and their properties, as hereinafter provided:

"Now, therefore, it is stipulated and agreed by and between the parties hereto that the party of the first part will execute and deliver unto the party of the second part a deed of gift of that certain lot situated on Howard street, in the City and County of San Francisco, and referred to in said complaint, and the same shall be and remain her separate property and estate.

"In order that there may be no further claims by either party to this agreement against the other in regard to property matters, it is understood and agreed by and between them that all the property owned by the party of the second part at the time of the marriage of the parties hereto, to wit, on or about the 25th day of January, 1885, shall be and remain her separate property and estate, to be disposed of by her as she may see fit.

"It is further understood and agreed by and between the parties hereto that the party of the second part, upon the execution of this agreement, will dismiss the said action brought in the said Superior Court of the City and County of San Francisco and release the injunction obtained against the defendant in said action, the party of the first part hereto, restraining him from withdrawing moneys from certain banks in said injunction specified, in the City and County of San Francisco, and also discharge the lis pendens filed in said action.

"It is further understood and agreed by and between the parties hereto that the party of the second part releases all claim against the party of the first part to any interest in the community property, or any property now held by the party of the first part, Patrick Menihan, or hereafter to be acquired by him, and relinquishes all claim to any portion of his estate, either community or separate, as an heir, in the event of his death before her death.

"It is further understood and agreed that the party of the first part relinquishes all claim against the party of the second part to any of her property which she owned at the time of the marriage of the parties hereto, or which she now owns or may hereafter acquire, as an heir or otherwise, it being expressly understood and agreed by and between the parties hereto that each shall have, and it is stipulated that each shall have, the absolute power of disposition of the property now held and possessed by them respectively, and that neither will claim any interest in said property during the lifetime of the other, or upon the death of the other, unless such interest shall be given by the voluntary will and testament of the other.

"It is further understood and agreed that the party of the second part will make no claim upon the party of the first part for her support.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

> "PATRICK MENIHAN.    (Seal)
> "MARGARET MENIHAN.    (Seal)"

### RELATION OF PARTIES PRIOR TO CONTRACT.

A brief statement of the relations of the parties prior to the execution of this instrument may be useful in the case.

Patrick Menihan and Margaret Pickett, widow of Michael Pickett, intermarried on the twenty-fifth day of January, 1885.

Patrick was a police officer at that time and continued in active service until December 7, 1899, when he was retired on a pension, his salary being one hundred dollars per month. He was not thereafter in any employment. Aside from his income he appears to have had no property of consequence when he married. One witness, an intimate friend, John McAuliffe, testified that decedent had some shares of mining stock ten days before his marriage. This witness was also a speculator on a small scale in stocks; but it does not appear that the ventures of either yielded a profit; indeed, it must have been otherwise, for McAuliffe says he held similar shares "to his sorrow." Decedent borrowed forty dollars from this witness on this occasion to pay assessments on this stock. He always told witness that he had no money and he had to carry

those stocks; so it may be deduced that this item was and is negligible or intangible.

At the time of the marriage to Menihan the widow Pickett was conducting a lodging-house on Howard street in a house acquired by her as part of her former husband's estate, one-half of which, however, was claimed by that husband's mother, he having owned the property prior to marriage. Decedent was one of her lodgers and was such at the time of their marriage.

On the eve of that event she deeded to Patrick her interest in this property, although it does not appear affirmatively that any cash passed to her, and it is shown by McAuliffe's evidence that Patrick was short of money.

It is contended that the grant presumed a sufficient consideration, and that in any event, it being in his name, it was his separate property.

In 1888 Mrs. Menihan acquired the other half interest in the Howard street property by purchase from her first husband's mother in settlement of litigation over it, to pay which she borrowed six thousand dollars from the German Bank, and she kept the property until decedent deeded back to her what she conveyed to him on the eve of their marriage. Then she had a clear title to the whole.

This occurred about sixteen years after the marriage to Menihan. After she acquired in this manner the title to the entire Howard street property, she sold it for twelve thousand five hundred dollars and bought other property on Seventeenth street. She was then living on Clementina street, on other property of her own, with decedent, but moved to Seventeenth street and they were there at the time of the fire, and, after the fire, she rebuilt on Seventeenth street, and thence on she and decedent continued to live at that place. She rebuilt with the proceeds of the insurance on Clementina street and Seventeenth street properties. She was short one thousand dollars on the rebuilding contract and Patrick did not want her to raise a mortgage, and he gave her that amount. She did not consider it a loan; he gave it to her. McAuliffe testified that Menihan told him that he made her a present of it; that he gave her that thousand dollars to save her from

raising a mortgage. He never claimed that it was intended as a loan.

"In his will, however, Patrick declares that in the year 1907 he loaned to his wife one thousand dollars which had never been repaid him and he said he wished her to have a life interest in that sum."

This declaration is made in the third clause of his will, which is here inserted:

"I declare that in the year 1907 I loaned to my wife, Margaret Menihan, the sum of one thousand ($1000.00) dollars, which said sum of one thousand ($1000.00) dollars has never been repaid me, and it is my wish that she shall have a life estate in the said sum of one thousand ($1000.00) dollars and in an additional sum of two thousand ($2,000.00) dollars from my said estate during the time of her natural life, and the remainder, if any, at the time of her death, shall go to my nephew, John Menihan, of Cloverdale, County of Sonoma, State of California. The foregoing bequest to my said wife, Margaret Menihan, to be in full for any and all claims for family allowance or support which she may have against my said estate."

As to Patrick's part in the establishment of the estate, it is calculated that in his employment as a policeman from the time of his marriage, January 25, 1885, to December 7, 1899, his salary aggregated more than seventeen thousand eight hundred dollars, and, it is argued, his earnings were undoubtedly invested and produced income, so that on January 3, 1901, when his wife brought suit for divorce, her statement in her verified complaint that her husband was then worth twenty-five thousand dollars, from his earnings and accumulations, was approximately accurate.

This is in evidence, and the widow, in her testimony, has reiterated its correctness.

This seems to have been the situation of the parties at the time of the agreement.

### THE RELATIONS OF PARTIES AT TIME OF CONTRACT.

We come now to the consideration of the circumstances existing at the execution of the contract, January 23, 1901.

It appears that at that time there were pending proceedings in divorce between these parties, and that to end the litigation and settle property rights this contract was consummated. In her testimony, the widow, while admitting that she signed the instrument, says that she did not know what she was signing, but thought it was simply a withdrawal of the divorce. After that she did not claim any of her husband's property. She thought it was all community property; paid all her own taxes and household expenses, and her husband never supported her, except to the extent of the twenty dollars per month which he paid for his board and lodging and laundry and care and attention given by her to him.

After that agreement he claimed none of her property; she claimed none of his, during his lifetime. They never actually separated, continued to live as before, domestically, but handled their property interests independently and individually, under the agreement, for twelve years, until he died.

What Patrick thought of the meaning and effect of this agreement may be gathered from the twelfth clause of his will, which is, after nominating the executrix and executor, as follows:

"Inasmuch as I have designated my wife, Margaret Menihan, as the sole beneficiary to a certain death benefit or policy of insurance in the sum of one thousand ($1000.00) dollars, which will become due upon my death from the Widows and Orphans Aid Association of the Police Department of the City and County of San Francisco, and inasmuch as my said wife and myself did on the 23d day of January, 1901, by a written agreement, executed by the both of us, fully and finally settle and adjust all business and property rights of each of us, I do not deem therefore that I am called upon in this my last Will and Testament to make any other or further provision for my said wife than hereinbefore provided."

From the time of the marriage, January 25, 1885, until his death, March 6, 1913, he lived continuously with his wife, except for twenty days, between January 3, 1901, and January 23, 1901, the date of the contract, which interval of interruption in their relations was due to the filing of the complaint for divorce; thenceforward, upon the execution of that agree-

ment, they continued their conjugal relations. There were no children. Patrick never contributed a dollar toward her support, except so far as, after the agreement, he paid her the twenty dollars already mentioned. At the time of the agreement Patrick was a retired policeman on a pension of fifty dollars a month. Mrs. Menihan says that he never supported her, except to the extent indicated. She always paid all household expenses.

### THE FORCE AND EFFECT OF THIS AGREEMENT.

It is claimed now by Mrs. Menihan that this agreement is absolutely void, and, therefore, is not an estoppel; or, if it be not absolutely void, that it was legally avoided by the conduct of the parties thereto subsequent to its execution.

### CHARACTER OF THE AGREEMENT.

The contestant relies primarily upon the statute to establish his contention that the agreement is absolutely void in law, and, quoting the concluding clause of the contract, which reads: "It is further understood and agreed that the party of the second part will make no claims upon the party of the first part for her sppport," cites section 155 of the Civil Code, which says, "Husband and wife contract toward each other obligations of mutual respect, fidelity, and support," and section 159, Civil Code:

"A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and except that they may agree, in writing, to an immediate separation, and may make provision for the support of either of them and of their children during such separation."

Contestant contends that it is very evident that by the provisions of the contract quoted an attempt was made to alter the legal obligation resting upon the deceased to support his wife, and that accordingly, tested by the cited sections of the Civil Code, so much of the contract was certainly void; and, it is further contended that such void provision so entered and became a part of the consideration thereof as to make the entire contract void.

Section 1667 of the Civil Code provides, "that is not lawful which is (1) contrary to an express provision of law; (2)

contrary to the policy of express law, though not expressly prohibited; or, (3) otherwise contrary to good morals."

Section 1668 of the same code declares that all contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

Section 1608 says that if any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void.

It is asserted by contestant that this agreement comes within these provisions, and that, therefore, the entire instrument is subversive of the statute and should be so cast out of court.

Numerous cases from many states are cited in support of this view.

Assuming, however, for the purpose of argument, that the agreement is not void, contestant claims that it was avoided by the subsequent conduct of the parties.

Upon this phase of the issue the points of the evidence already recited herein need not be repeated. The pith of the argument of contestant is that, the parties having concluded to reconcile their differences and resume their marital relations, from the moment of the reconciliation and resumption the entire plan of adjustment became null and void.

A long list of citations is made to sustain this proposition and the attention of the court is particularly directed to Hale v. Hale, 40 Okl. 101, 135 Pac. 1143, decided November 4, 1913, the latest case bearing upon this subject, and, it is suggested that the court will not fail to note the similarity of the statutes therein examined with our own, and will likewise be impressed with the splended citation of authorities referred to therein.

This court has examined the case of Hale v. Hale, and has been impressed with the industry and erudition of the writer of the opinion, but it is a statement of principles guiding the courts in strictly separation agreements, and the agreement here in question is not such a case.

The evidence here shows, as counsel on both sides agree, that from the very day of its execution down to the day of

the death of the husband there was no change in the matrimonial relations of the parties to the agreement.

They both acquiesced in and acted upon the agreement as to property rights.

This brings us to the terminal point.

This is not an agreement for a separation. There was neither in fact nor in law any separation, actual or constructive, physical or legal. The agreement did not provide for anything of the sort. So far from being subversive of the statute, it was in consonance with the Civil Code, which provides in section 158 that such contracts may be made between husband and wife.

"Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons, occupying confidential relations with each other, as defined by the title on trusts."

It was a contract as to property solely, and such as they were competent mutually to make.

"Neither husband nor wife has any interest in the property of the other, but neither can be excluded from the other's dwelling": Civ. Code, sec. 157.

"A husband and wife cannot by any contract with each other, alter their legal relations, except as to property, and except that they may agree, in writing, to an immediate separation, and may make provision for the support of either of them and of their children during such separation": Civ. Code, sec. 159.

That such an agreement is valid and effectual under the statute seems to have been the consistent holding of our supreme court. It is a settlement of property rights and not a contract of separation, and hence the cases on separation agreements are not absolute authority.

Having arrived at this conclusion, it is not necessary to decide upon the other points, except to suggest, without now deciding, that if this court err in respect to the agreement, contestant seems to be correct as to the other contentions.

. In support of the contention that the contract in the foregoing case was invalid, counsel for the widow cited sections 155, 159, 1608, and 1667 of the Civil Code. He also cited the case of Foxworthy v. Adams, 136 Ky. 403, Ann. Cas. 1912A, 327, 27 L. R. A. (N. S.) 308, 124 S. W. 381, wherein it is said: "Notwithstanding the statutory power of husband and wife to contract with each other, husband and wife may not contract with each other for the payment by the husband to the wife for her services in nursing him during his illness; it being the duty of husband and wife to attend, nurse and care for each other, where either is unable to care for himself."

To like effect he cited Ryan v. Dockery, 134 Wis. 431, 126 Am. St. Rep. 1025, 114 N. W. 820, 15 L. R. A. (N. S.) 419; Michigan Trust Co. v. Chapin, 106 Mich. 384; 58 Am. St. Rep. 490, 64 N. W. 334; Corcoran v. Corcoran, 119 Ind. 138, 12 Am. St. Rep. 391, 4 L. R. A. 782, 21 N. E. 468; Merrill v. Peaslee, 146 Mass. 460, 4 Am. St. Rep. 334, 16 N. E. 271; Smutzer v. Stimson, 9 Colo. App. 326, 48 Pac. 314.

In support of his contention that, assuming that the contract was not invalid, it was avoided by the conduct of the parties thereto subsequently to its execution, he cited: Wells v. Stout, 9 Cal. 479; Sargent v. Sargent, 106 Cal. 541, 39 Pac. 931; Jones v. Lamont, 118 Cal. 501, 62 Am. St. Rep. 251, 50 Pac. 766; Estate of Martin, 166 Cal. 399, 137 Pac. 2; Estate of Yoell, 164 Cal. 542, 129 Pac. 999; Roberts v. Hardy, 89 Mo. App. 86; In re Smith, 13 Misc. Rep. 592, 36 N. Y. Supp. 820; Knapp v. Knapp, 95 Mich. 474, 55 N. W. 353; Hartl v. Hartl, 155 Iowa, 329, 135 N. W. 1007; Zimmer v. Settle, 124 N. Y. 37, 21 Am. St. Rep. 638, 26 N. E. 341; Gaster v. Gaster, 90 Neb. 529, 125 N. W. 235; Hale v. Hale, 40 Okl. 101, 135 Pac. 1143; James v. James, 81 Tex. 373, 16 S. W. 1087; Stidum v. Stidum, 164 Ill. App. 261; Dennis v. Perkins, 88 Kan. 428, 43 L. R. A. (N. S.) 1219, 129 Pac. 165.

In this connection he called particular attention to the case of Hale v. Hale, 40 Okl. 101, 135 Pac. 1143.

Counsel for the executor, in arguing for the validity of the contract quoted the following from In re Davis, 106 Cal. 456, 39 Pac. 756.

"The agreement of separation entered into between Davis and wife was a contract which they were competent to make with one another, and one in fact expressly authorized by statute: Civ. Code, secs. 158, 159. It rested upon good and sufficient consideration, and was fully carried out. The obvious purpose was not only to definitely sever the property rights of the parties, but mutually to relinquish and release all inheritable interest of each in the property and estate of the other. It was apt and ample in form for the purpose, and that such was its effect we have no doubt. And that its purpose and effect in that regard are to be upheld is fully sustained by authority."

To like effect counsel cited the following cases: In re Davis, 106 Cal. 456, 39 Pac. 756; In re Noah, 73 Cal. 583, 2 Am. St. Rep. 829, 15

Pac. 287, 88 Cal. 468, 26 Pac. 361; Wickersham v. Comerford, 96 Cal. 433, 31 Pac. 358; Estate of Garcelon, 104 Cal. 570, 43 Am. St. Rep. 134, 32 L. R. A. 595, 38 Pac. 414; Sargent v. Sargent, 106 Cal. 541. 39 Pac. 931; Jones v. Lamont, 118 Cal. 499, 62 Am. St. Rep. 251, 50 Pac. 766; Kaltschmidt v. Weber, 145 Cal. 599, 79 Pac. 272; Estate of Edelman, 148 Cal. 236, 113 Am. St. Rep. 231, 82 Pac. 962; Estate of Wickersham, 153 Cal. 607, 96 Pac. 311; Estate of Hite, 155 Cal. 440, 101 Pac. 443, 17 Ann. Cas. 993, 21 L. R. A. (N. S.) 953; Estate of Miller, 156 Cal. 121, 23 L. R. A. (N. S.) 868, 103 Pac. 842; Estate of Yoell, 164 Cal. 540, 129 Pac. 999; Estate of Martin, 166 Cal. 399, 137 Pac. 2; Estate of Scott, 147 Pa. 102, 23 Atl. 214; Crum v. Sawyer, 132 Ill. 443, 24 N. E. 956; Daniels v. Benedict, 97 Fed. 367, 38 C. C. A. 592.

Counsel maintained further that a defense founded upon such an agreement, by way of estoppel, is cognizable by the court in probate, citing: Estate of Edelman, 148 Cal. 236, 113 Am. St. Rep. 231, 82 Pac. 962; Estate of Garcelon, 104 Cal. 570, 43 Am. St. Rep. 134, 32 L. R. A. 595, 38 Pac. 414; Young v. Hicks, 92 N. Y. 235.

That the probate court has no jurisdiction to try title, counsel cited the following cases: Estate of Yoell, 164 Cal. 546, 129 Pac. 999; Estate of Vance, 141 Cal. 627, 628, 75 Pac. 323; Burris v. Kennedy, 108 Cal. 335-344, 41 Pac. 458; Burris v. Adams, 96 Cal. 667, 31 Pac. 565; Wetherly v. Straus, 93 Cal. 283, 28 Pac. 1045.

That the status of the spouses, as recognized and provided for by the agreement, was not subsequently changed so as to invalidate the agreement counsel cited the following authorities: Wells v. Stout, 9 Cal. 491; Baird v. Connell, 121 Iowa, 278, 96 N. W. 865; note in Ann. Cas. 1933A, 1330.